### IN THE

## COURT FOR THE CORRECTION OF ERRORS

### OF THE

## STATE OF NEW–YORK.

### DURING THE YEAR 1839.

---

## W. & S. B. Vernon *vs.* The Manhattan Company.

In case of the *dissolution of a copartnership*, actual notice of the dissolution must be brought home to all persons with whom the firm has had *dealings*, to protect, *as to such persons*, one partner from the acts of another in the use of the partnership name after the dissolution.

Where a note was made by a firm in the copartnership name, which was discounted by a bank for the *accommodation of the payee*, and was repeatedly renewed, *it was held*, that the firm must be considered as having had dealings with the bank within the meaning of the rule requiring *actual notice of the dissolution*.

Proof that the *bank* took a *newspaper* in which notice of the dissolution was published, was held not to amount to *actual notice*.

*It seems*, however, that the rule of *actual notice* would not be applied to *every person* through whose hands, in the ordinary course of business, the paper of the firm had passed, but would be limited to those who were in the habit of taking the paper under circumstances where the knowledge of the fact on the part of the firm might be legally presumed.

*It seems*, also, that the acceptance of a note from one of several partners, for a debt due from the firm, in lieu of the note of the firm previously given, will not discharge the other partners unless there be evidence that such was the intent of the transaction; and that the new note remaining unpaid, the creditor may recover his debt under the *common counts*, in an action against all the members of the firm.

ERROR from the supreme court. The Manhattan Company brought an action of assumpsit in the superior court of the city of New-York, against W. Vernon, P. H. Vernon, and S. B. Vernon, on a promissory note made by the defendants, for the sum of $1700, dated 15th April, 1833, payable sixty days after date, to John A. Moore or order, which was endorsed by the *payee*, and by the firm of Hinton & Moore. The defendants, on the first day of December, 1831, were partners in trade, transacting business under the name of " William Vernon & Co.," and continued such partners until 28th February, 1833, when a notice of the dissolution of the firm was published in two of the newspapers printed in the city of New-York, one of which was taken by the Manhattan Company or Bank, and was proved to have been left by the carrier of the paper at the bank. This notice stated that the unsettled business of the firm would be adjusted by *P. H. Vernon*. The note in question was drawn by *P. H. Vernon*, in the partnership name, and *W. Vernon* resisted a recovery on the ground of the dissolution of the firm previous to the making of the note. On the part of the plaintiffs it was shown that the note in question was the last of a series of notes drawn by the defendants, payable to John A. Moore, and discounted by the bank for his accommodation. The first note was for $5000, dated 1st December, 1831, payable in ninety days, and was renewed from time to time, (eight times,) until the note in question was given. The amount of the loan was reduced from time to time. One of the notes laid under protest 12 days before its renewal. The notes which were taken up were given to John A. Moore, and all the moneys paid were paid by him. Upon the note in question, he paid $340, which was endorsed upon the note. The counsel for the defendants requested the court to charge the jury, as matter of law, that *William Vernon* was not bound by the signature to the note, nor on the consideration thereof, if they should find that it was made for the accommodation of the endorser, and not shown to be made with the assent of William Vernon ; and also that he was not bound by the note, because it was issued after notice to the plaintiffs of

Vernon v. The Manhattan Co.

the dissolution of the copartnership; and that such notice as was shewn in evidence was in law proof of notice of the dissolution to the plaintiffs. The chief justice of the superior court charged the jury as matter of law, that under the facts shown in evidence, the defendants were to be deemed dealers with the plaintiffs, and that as such, no notice of dissolution was sufficient but *actual notice*, and that the notice proved in the case was not in law actual notice. He further charged the jury that if they should be of opinion that the plaintiffs received the note in the ordinary course of their business, without any knowledge as to the terms on which the note was made and delivered, or its consideration, they would be warranted in finding for the plaintiffs. The counsel for the defendants excepted to the charge, and the jury found for the plaintiffs; on which finding judgment was entered. The supreme court *affirmed* the judgment, and the defendants removed the record into this court by writ of error. The cause was argued in this court by:

*D. Lord, jun.* for the plaintiffs in error.

*J. Slosson & S. P. Staples,* for the defendants in error.

*Points for the plaintiffs in error :*

I. The firm of W. Vernon & Co. were not actual dealers with the Manhattan Company; and publication of the dissolution of the copartnership in two newspapers at the place where all parties transacted business, was legal and sufficient notice of dissolution. *Ketchum* v. *Clerk,* 6 *Johns. R.* 144. *Graves* v. *Merry,* 6 *Cowen,* 701. *Lansing* v. *Gaine,* 2 *Johns. R.* 300.

1. Actual dealing, means direct trading and intercourse on credit; the issuing of a note, which any stranger, after a series of negotiations may take, is not an actual dealing with all through whose hands the note may pass. W. Vernon & Co. were actual dealers with John A. Moore; John A. Moore with the bank; but W. Vernon & Co. by merely signing the notes which Moore got discount-

ed for his own account at the bank, were not dealers with the bank. W. Vernon & Co. did not " traffic, transact business, nor trade with the bank ;" they neither " dealt with it by speech or by letter ; neither by themselves nor by the mediation of a third."

2. Particular notice, as distinguished from general notice by advertisement, is required in the case of actual dealers, because the credit on the dealing grows out of personal intercourse and inquiry between the parties ; but where there is no actual dealing or intercourse, the credit is given upon general repute ; and this is removed by general notice or newspaper advertisement.

3. The making of a note, acceptance or endorsement, whether on a consideration from an immediate party or for his accommodation, is in all cases alike, saying directly to the world that there is such a firm, and leads the taker of the paper to give credit. If this is ground of requiring actual notice as distinct from general notice, then no partnership can be effectually dissolved until every individual, through whose hands negotiable paper has passed, whether his name be upon it or not, is found and notified, at the peril of the partners. This is impracticable ; and an impracticable duty never can be a rule of law.

4. The non-payment of the note protested August 4th, which was paid by John A. Moore to the bank, August 16th, by means of a new discount obtained by him from the bank, did not constitute actual dealing between W. Vernon & Co. and the Manhattan Company. The notes were always taken up by Moore, who exclusively dealt with the bank ; neither the making of the protested note, nor of the note given in renewal, was a dealing between W. Vernon & Co. and the Manhattan Company ; and certainly the non-payment of the protested note was not. A note being protested in a bank is no proof whether the note be held by the bank on its own account or as agent for collection merely ; and it is extravagant to say, that holding a note for collection constitutes a dealing between the bank and the maker.

5. Merely demanding payment of a note is not a dealing with the maker; dealing, in the law of partnership, means a direct intercourse in which credit is given.

II. There was legal proof of actual notice of the dissolution, to the Manhattan Company, by the delivery to them of the newspapers containing the notice. *The Bank of South Carolina* v. *Humphrey*, 1 *McCord*, 388.

1. The facts of the contents of the notice and its delivery to the bank being proved without contradiction, were, in law, notice, and not mere evidence of notice. *Mowatt* v. *Howland*, 3 *Day's R.* 353. *Graves* v. *Merry*, 6 *Cowen*, 704. The law does not require in any case proof both of the delivery of a notice and of its being read.

2. The bank is to be presumed to have taken a newspaper, for the purpose of mercantile information, especially as to the operations of persons whose responsibility it might hold; and the more the newspaper is stuffed with notices, the more attention would be paid to it. The newspaper is also to be presumed to have been received and communicated to the proper officers of the bank, for whose information it was taken, as much as any other paper served on the bank.

3. The notices of carriers are not analogous to notices of dissolution; a carrier's liability never rests upon general reputation; therefore it is not removed by general notice. In both respects the reverse is the case, as to the liability of partners. And men are not to be presumed to read all the notices of carriers, as a bank is of notices of copartnership and dissolution.

III. If by reason of sufficient evidence of notice of the dissolution, William Vernon was not liable as partner on the notes, he was not liable under the general counts.

1. The delivering up of the old notes on which he was liable, upon the receiving of the new notes upon which he was not liable, was an express waiving of his responsibility, and precludes any implied agreement. *Toussaint* v. *Martinant*, 2 *T. R.* 104.

2. W. Vernon was no party to the immediate dealing with the bank; the latter lent money and paid money at

the request and for the account of John A. Moore, and not of W. Vernon & Co. *Arnold* v. *Camp*, 12 *John R.* 409. *Newmarch* v. *Clay*, 14 *East*, 230.

IV. W. Vernon is not liable upon the note in suit, by reason of the authority to adjust the unsettled business. An authority to adjust, does not authorize giving a negotiable security for an adjusted balance. *Kilgour* v. *Fizlayson*, 1 *H. Black*, 155. *Sanford* v. *Michles*, 4 *Johns. R.* 224.

*Points for the defendants in error :*

I. The firm of Wm. Vernon & Co. were *dealers* with the plaintiffs as money lenders, from and after the discount of the first note in the series, till the dissolution of the firm.

II. The defendants below were therefore bound to give *actual* notice to the plaintiffs of the dissolution before they can make good their defence to the note declared on.

III. Mere publication of an advertisement of a dissolution, in a paper taken by a creditor dealing with a firm, has never been adjudged actual notice, even to an individual or natural person, much less to a corporation. *Gow on Part.* 305 *to* 310, *Eng. ed. Colly on Part.* 310, 311. 3 *Kent's Comm.* 66, *&c.* 6 *Johns. R.* 144. 6 *Cowen*, 701. 8 *Wendell*, 423. *Mann. Dig.* 272. 1 *Peake'e Cas.* 154. 41. 3 *Day*, 355. 3 *Litt.* 423. *Martin* v. *Walton & Co.* 1 *McCord*, 16 ; *Bank of S. Carolina* v. *Humphrey & ·Mathews*, *id.* 388 ; *Irby* v. *Vining*, *id.* 379 : the three last cases in South Carolina, where the doctrine has been specially considered. 1 *Stark.* 418, *Eng ed.*; 388, *Am. ed. Angel & Ames on Corp.* 174— *Of notice to Corporations. Manhattan Co.* v. *Lydig*, 4 *Johns. R.* 388. 1 *Stark. Cas.* 186, *Eng. ed.*; 148, *Am. ed.*; 2 *id.* 49, 249, *Am. ed.*; 2 *Campb.* 415 ; 3 *Bing.* 2 ; *Story on Bailm. ch.* 6 : the five last cases are concerning notices by common carriers, how far they must be brought home.

IV. The mere fact that the plaintiffs below delivered up the last note but one after the failure of the firm, and took a new note, signed in the same manner with the other notes,

in the absence of other evidence, shows conclusively that when they took the last note, they were ignorant of the dissolution of the firm.

V. To show that the plaintiffs below assented to the release of the solvent member of the firm, it must be made to appear that they had *actual* knowledge of the dissolution ; and yet were willing to receive the note in question in the same form, obligatory only upon the insolvent members of the firm.

VI. Unless it appear affirmatively, on the part of the defendants below, that the plaintiffs knowingly, and understanding all the material facts, gave up the last note but one executed before the dissolution of the firm, for the last note, executed after the dissolution, they have the same right to recover, which they would have had, in case they had retained the last note given up.

VII. The facts being found, what constitutes a *dealer* is matter of law ; and the consideration of the evidence, which in this case went to show that Vernon & Co. were dealers with the Manhattan Company, was not withdrawn from the jury.

VIII. The plaintiffs below are at all events entitled to recover under the common counts. 8 *Cowen*, 83. 4 *Wendell*, 411. 12 *Johns, R.* 90.

After advisement the following opinions were delivered :

By the CHANCELLOR. It does not appear to be material to inquire whether the bank, upon the facts proved at the circuit, was a previous dealer with the firm of William Vernon & Co., so as to render an actual notice of the dissolution of the copartnership necessary, to exempt the firm from liability upon the note subsequently made by P. H. Vernon in the name of the firm. It is true, that after a dissolution of the firm, one of the copartners is not authorized to sign the name of the firm to a negotiable security, even for a debt due from the firm before dissolution, so as to render the copartnership jointly liable upon such new security, to a creditor who has either actual or constructive notice of

the dissolution of the copartnership. But it is equally well settled that where there is a subsisting debt against the firm at the time of its dissolution, the taking of a new security for the debt, from one of the members of the firm is not *per se* a discharge of the previous debt of the copartnership; but to discharge the other members of the firm, there must be evidence of an intention on the part of the creditor to discharge them. *Smith* v. *Rogers*, 17 *Johns. R.* 340. *Bedford* v. *Deakin*, 2 *Barn. & Ald.* 210. *Harris* v. *Lindsay*, 4 *Wash. C. C. R.* 271. If there was no actual notice to the bank in this case of the dissolution of the partnership, the mere taking of a new note, apparently drawn by the same persons, would not discharge the liability of the copartnership for the previous debt; and the former note having been given up under the supposition that the note received in the renewal thereof was drawn by the same persons, the bank would still be entitled to recover so much of their debt as remain unpaid, under the common counts of the declaration. *Smith's Merc. Law*, 2 *Lond. ed.* 51.

I think, however, the facts in this case clearly constituted a *dealing* with the bank, so as to entitle them to *actual notice* of the dissolution, even if the note of the 15th of April, 1833, had been given for a new debt for which the copartnership was not previously liable. I do not understand that the judge at the trial was guilty of the absurdity of deciding that the question, whether there had been a previous dealing with the firm, was a question of law. On the contrary, the decision evidently was, that the facts as proved on the trial were sufficient in law to constitute a dealing with the firm, within the intent and meaning of the rule which requires actual notice to those with whom there has been previous dealings. Much was said upon the argument as to the meaning of the word *dealing*. I do not think, however, the question in such cases ever turns upon the meaning of any particular word; as it might, if we were endeavoring to ascertain what the parties meant by the use of such a word in a written contract. In reference to this rule, the word dealing is merely used as a general term to convey the idea that the person who is entitled to actual

notice of the dissolution, must be one who has had business relations with the firm, by which a credit is raised upon the faith of the copartnership. Professor BELL does not use the word *dealing*, in stating the rule, but states it thus : " A credit already raised on the faith of the partnership is presumed to be continued on the same footing, unless special notice of a change shall be given." *2 Bell's Comm.* 640. It is not necessary, therefore, for us to decide that every person, through whose hands the copartnership securities have passed, and who may be wholly unknown to the firm, is entitled to actual notice, in order to protect the copartners from liability for debts contracted with him by some of the partners after the dissolution. But in the present case there was a continued credit in the bank, upon the faith of this copartnership, for fourteen months previous to the dissolution of the firm, by eight successive renewals of the note made by the partnership and discounted upon the application of Moore, the payee ; and as the eighth renewal, although a short time after the dissolution of the copartnership, was by a note in the name of the firm, precisely in the same form as the previous notes, it is evident that it was a case in which the firm would be liable to the bank, unless the bank had actual notice that the copartnership was dissolved at the time the last renewal took place. I think the charge of the judge who tried the cause was therefore right in that respect.

It appeared, however, on the trial, that the paper in which the notice of the dissolution was published was taken at the bank ; and the counsel for the defendants called upon the court to charge the jury that this was in law proof of notice of the dissolution. But the judge told the jury that it was not in law actual notice of the fact. I have no doubt, upon the cases that have been decided, that upon such evidence, if there are no circumstances from which a different conclusion may be drawn, the jury may be authorized to presume that the party by whom the paper was taken had read the notice of dissolution and was therefore actually aware that it had taken place at the time the new security was taken in the name of the firm. That; howev-

er, would not have justified the court in charging the jury, as a matter of law, that the taking of a newspaper filled with advertisements, was actual notice of every thing contained therein. Where a special notice is necessary in consequence of a previous dealing with the firm, or a credit already raised upon the faith of the copartnership, such notice may be inferred from many circumstances, as well as from direct and positive proof of notice of the dissolution; but to exempt the copartners from liability, the jury must be satisfied that the person with whom the new debt was contracted either had actual notice that the copartnership was dissolved, or that facts had actually come to his knowledge sufficient to create a belief that such was the fact. From the evidence in this case, I do not believe that the officers or the directors of the Manhattan Company, either knew or believed that the firm of William Vernon & Co. was dissolved when they received this last note in renewal of the note of the 15th of February, 1833; upon which last mentioned note that firm was holden as the drawers, at the time such renewal took place.

It seems to have been taken for granted by the counsel for the defendants on the trial, that proof that the note was originally discounted for the accommodation of John A. Moore, and had been subsequently renewed as an accommodation note, was legal evidence that it was not given for a debt actually due from the drawers of the note to him. Without some evidence that the notes were not what upon the face of them they purported to be, the question of notice to the bank is wholly immaterial. There is not a particle of evidence in the case that John A. Moore had notice of the dissolution of the partnership at the time the last note was given to him, and as there was clearly a direct dealing with the firm by him, previous to the dissolution, so as to entitle him to actual notice to discharge the copartners from liability to him upon this last note, it follows of course, that if the note could have been collected of the copartners by him, at the time he negotiated it at the bank in renewal of the former note, the bank is entitled to recover thereon, even if the officers of the bank actually knew of the disso-

lution of the copartnership at the time it was thus received. *Graves* v. *Merry*, 6 *Cowen*, 703.

Upon the whole, I am satisfied that there was never any intention on the part of the Manhattan Company or its officers, to discharge their claim against all or any of the members of the firm of William Vernon & Co., for the balance due to the bank from that firm at the time of its dissolution; and that the bank was entitled to recover the sum which remained unpaid at the time of the trial, either upon the special count upon the last note or under the common counts; and that there was no misdirection in point of law by the judge who tried the cause, to the prejudice of the plaintiffs in error. I shall therefore vote for an affirmance of the judgment of the supreme court, which affirmed the judgment of the superior court of the city of New-York.

By Senator VERPLANCK. It is a fundamental doctrine of the law of partnership, that if a person suffers his name to be used in trade, or otherwise holds himself out as partner, he is to be considered as such, whatever may be his real relation to the firm; and this is so, because he may induce others to give credit to the copartnership which it would not else have obtained. Hence, a person once known as a partner, or having held himself out as such, is liable for all the debts of the firm in the usual course of its business, as long as he gives reason to suppose that he is still a partner. Thus, in one of the decided cases, 2 *Stark.* 290, a trader who suffered his name to remain on the sign of his former shop, was held liable for the debts of his former partners continuing the business there.

Now following out this principle, how is a person once known as a partner, to prevent that inducement to false credit to his former associates, which may arise after the withdrawal of his funds, from their continued use of the credit which he assisted to obtain? How shall he entitle himself to be exempted from future liability on their account? The natural reply is, that he must take all the means in his power to prevent such false credit being given. It is impossible for him to give direct notice of his with-

drawal to every man who may have seen the name of his former firm, or have accidentally received its check or note. No man is held to impossibilities. But he does all that he can do in such a case, by withdrawing all the exterior indications of partnership, and giving public notice of dissolution in the manner usual in the community where he resides.

He may have obtained credit for his copartnership, by making his own interest in it known through the course of trade. So far as those are concerned who have had no direct intercourse with the firm, he does all that is in his power to prevent the continuance and abuse of such credit, if he uses the same sort of means to put an end to that credit which may have caused it. But there are persons with whom he or his partners may have transacted business in the copartnership name, and received credit from. To such persons, he has given more than a general notice of partnership, for he has directly or indirectly ratified the acts of the house, and confirmed the credit that may have been given either wholly or in part upon his own account. He knows, or he has it in his power to know, who are the persons with whom such dealings have been had. Public policy, then, and natural justice, alike demand that he should give personal and special notice of the withdrawal of his responsibility to every one who had before received personal and special notice, either by words or acts, of his actual responsibility and interest in the copartnership. Justice requires that the severance of the united credit should be made as notorious as was the union itself. This is accomplished by the rule that persons having had particular dealings with the firm should have particular notice of the dissolution or alteration; but that a general notice by advertisement or otherwise, should be sufficient for those who know the firm only by general reputation. Hence our law has established the rule that to all persons having previously dealt with the copartnership, it is requisite for the discharge of a retiring party from new liability, that actual notice should be brought home to the creditor, or at least, that notice should be *bona fide* given under such circum-

Vernon v. The Manhattan Co.

stances, as to shew that he has done all that custom, prudence and good faith require to bring the knowledge home to the party. These are familiar principles, but I have stated them thus fully, in order to trace their application to the chief and important question in this case: " Who in the sense of these rules, are *dealers* with a firm in consequence of taking or holding their negotiable paper ?"

For the reasons already suggested, I cannot consider those who merely take the paper of a firm and pass it away without any other intercourse with the makers, to be therefore *dealers* in the meaning of this rule. It is not dealing with a commercial house, to have occasionally taken from others, paper made or endorsed by that firm. Temporary credit has here been given to the firm on its general reputation alone, but nothing has passed between the parties whereby the partners confirm and acknowledge their joint responsibility. If such paper was not taken in some immediate and reciprocal transaction with the firm, so as to bring the parties into mutual dealing, or if there were no continued or repeated giving and receiving of credit upon such endorsement, it requires a great stretch of the ordinary meaning of words to call such a taking of paper, *dealing* with the makers or endorsers. We cannot, it seems to me, rightly call a man a dealer with a firm who has thus taken paper from a third hand, and received payment through a bank, or passed it away to another. In such a case, it would commonly be to require impossibilities, to insist that the partners of a house in extensive trade, should be able to know for years who had been the last owner of their paper, or through whose hands it may have passed. Even where payment is made, as through a bank, it can rarely be known whether the bank or other last holder, held it as discounted or merely for collection. There is nothing in the most minute system of accounts which could enable a house to trace out all the persons who may have at any time, thus given them credit on general reputation, and to send all of them special notice as dealers. The case is quite otherwise in respect to those to whom the paper is immediately made payable, and issued in the ordinary course of

business. So also, it is, when paper bearing the name of the firm, is taken by others in the course of a continuous and repeated credit, placing the parties within the direct knowledge of each other. Here the partners know, or have the means of knowing, without going out of the course of their own business, who have thus given them credit, and with whom they have thus dealt. Here then, the reason of the general rule applies, that there should be direct notice of the withdrawal of part of that united credit, to those who were known to have relied upon it, and who might be induced to rely upon it again, if left in ignorance of the change.

In the present instance a note is given by Vernon & Co. to one Moore, and made payable to him. It receives the endorsement of another firm after Moore's name, and is discounted by the Manhattan Bank for Moore's accommodation. The loan is eight times successively renewed with occasional reductions, a new note of the same parties being each time substituted. It is true that each successive note was taken up by Moore, the immediate dealer with the bank, but as on each occasion a new note of Vernon & Co. was substituted, it is obvious that Moore in this acted in behalf of the makers of the notes so taken up by means of renewed paper. The first loan was for the accommodation of Moore; but the renewals were evidently alone for the accommodation of the maker who must otherwise have paid some one of these notes. Moore was then their agent, not in procuring the loan, but in making the renewals and partial payments. The notes too, must have been returned to the makers with their several endorsements, receipts or stamps upon them. They could not well be ignorant who it was that gave them this prolonged and repeated credit, and to whom the obligation of the firm was thus renewed. Allowing, however, that they were ignorant of this fact, (as the knowledge is not brought home to them in the evidence,) still the several partners had the means of knowing through Moore, who represented them in the transactions. This equally with knowledge would impose the responsibility of

actual notice to habitual dealers. No man is to take advantage of his own negligence.

The history of the transaction strongly exhibits the equity of the rule of notice. It is not probable that after the failure of the firm thus making the original note, the notes for which all the partners were unquestionably known to be liable should be given up, and a new one, a little reduced in amount with a small cash payment, received in lieu, if it had been actually known to the bank that the only solvent and responsible member of the firm had retired from the house.

Judge Bronson, in his dissenting opinion, observes that, " the jury were charged as *matter of law*, that under the facts of the case shown in evidence, the defendants were to be deemed dealers with the bank." This, the judge thinks incorrect, and that this was a question not of law, but of fact. The line of distinction between law and fact, is often not broadly marked. But the facts here are undisputed. There is no contradiction of evidence; no contest of probability as to who should be deemed dealers, for the jury to settle. The question is simply upon the statement of the fact of the repeatedly renewed notes of Vernon & Co. originally discounted for Moore : whether or not, under such circumstances, " these makers were dealers in the sense of the rule of law requiring actual notice to discharge such dealers from future joint and several liability ? " This appears to me strictly a question of legal inference. It is analogous to the case of evidence of new promises or acknowledgements taking a debt out of the statute. If this evidence be doubtful or contradictory, that would be for the jury to pass upon ; but where there is no dispute as to the facts, the true legal inference to be drawn from them— whether or not such promise or acknowledgement took the case out of the statute—is a matter of law. See opinion of *Sutherland, J.* 1 *Wendell,* 611. A decision of the supreme court of Connecticut comes still closer to this very point. In *Mowatt* v. *Haviland, 3 Day's R.* 353, that court held that when the facts supposed to constitute notice of a dissolution

of partnership were once ascertained, it is altogether a question of *law* whether the notice was reasoable or not.

Upon these grounds, I think the judgment of the court below should be affirmed, although as will have been seen, I am far from agreeing with *Judge Cowen,* as to the extent to which, in delivering the opinion of the majority of the supreme court, he carries the contingent liability of partners making negotionable paper, by considering them as constructively dealing with every person through whose hands their paper may pass; for if that be the law of the land, I agree with Judge Bronson, that "no diligence in giving notice of a dissolution can save one partner from the peril of being ruined by the other."

By Senator WAGER. There are three questions arising in this cause : 1. Were the defendants below, dealers with the Manhattan Company, within the rule requiring actual notice of the dissolution of a copartnership? 2. If actual notice were necessary, is such notice to be presumed from the proof given in the cause? and 3. Are the defendants liable as copartners, under the general counts upon the original indebtedness, to the extent of the amount claimed upon the note declared on?

It is a well established rule of law, that copartners are bound by the acts of any of the members of the firm with all persons with whom the firm has had previous dealings, until actual knowledge of a dissolution be brought home to such persons. It may not be necessary to show by positive proof that the party had actual notice; but such circumstances should be proved as will raise a strong and almost irresistable presumption, that the knowledge of the dissolution was brought home to the party. As to all the rest of the world, except to those who have had actual prior dealings with the firm, and consequently given them credit upon personal representation, the general notice is sufficient. A publication in such cases, in one of the regular newspapers of the city or county where the partnership business was carried on, is the usual mode of giving the information, and as to persons who have not before dealt with the firm,

Vernon v. Manhattan Co.

is sufficient. As to persons having prior actual dealings, notice is usually given by a circular sent to all the correspondents of the house, or in some other mode, by which the knowledge of the dissolution may be brought to the creditor.

In the case under consideration, it therefore becomes material to inquire, whether the parties were actual dealers as regarded each other. Was there a confidence and credit given to the firm of William Vernon & Co., the makers of the note, arising from actual intercourse and dealing, as is ordinarily understood by the terms? The action in this case is brought upon a promissory note for seventeen hundred dollars, payable to the order of John A. Moore, and endorsed and procured by said Moore to be discounted by the plaintiffs. It was the last of a series of notes, all of which had been made by the defendants, payable to Moore's order, and by him procured to be discounted at the Manhattan Bank. The notes were made for his accommodation, and he drew the money from the bank, and took up the notes when they fell due. There is no evidence in the case showing that Vernon & Co. ever knew where the notes were procured to be discounted, unless such knowledge is to be inferred from the fact that one of the series was protested for non-payment, and was shortly afterwards taken up by Moore. In protesting that note, which was the third in the series before the one prosecuted, it was necessary to make a demand upon the makers, but it need not necessarily appear on such demand to whom the note belonged. It might have been made when they were absent from their place of business, or the makers may have supposed that the note was held by the bank for collection merely. They cannot, therefore, in my opinion, be said to be actual dealers with the bank, though Moore, the endorser, may have been. There is nothing in the case to show that any credit was given to the note in question at the bank because of the names of Vernon & Co., except that which arises out of general reputation that they were partners, a matter which is discharged by general notice or advertisement. To require them under the circumstances

to give actual notice as dealers, would be establishing a rule, by which partners would be constantly liable to be imposed upon after dissolution, by the acts of dishonest members of the firm. It would be requiring them to trace all their negotiable paper through all its negotiation, from the commencement to the ending the copartnership: a burthen too unreasonable to be required by the common law.

As it regards the second point above stated, I consider it unnecessary to determine whether the circumstances proved constituted actual notice in this case, inasmuch as I have come to a conclusion, from a view of all the circumstances, that the parties were not prior dealers within the rule requiring actual notice. The notice proved was therefore sufficient.

The judge at the trial erred in charging the jury, as matter of law, that under the facts shown in evidence, the defendants were to be deemed dealers with the plaintiffs, and as such, that no notice of dissolution was sufficient, but actual notice. In thus charging the jury, he took from them a question of fact, which it was their province to decide. This of itself constitutes a good ground for reversing the judgment and awarding a *venire de novo*.

No doubt can be entertained that William Vernon was liable upon all the notes of the series, with the exception of the last, which was given after general notice of dissolution. That note having been taken by the bank, without knowledge of the dissolution of the firm, and without any express agreement between the parties that it should be in discharge of the prior indebtedness, that indebtedness remained, notwithstanding the giving of the new note. The bank undoubtedly supposed that in renewing the note for the amount of the note declared on, they were to that extent merely extending the credit to the same parties before holden. The delivering up of the old note, on which all the members of the firm were liable, cannot therefore be regarded as a waiver of the responsibility of William Vernon. To waive that responsibility, the plaintiffs below should have been shown to have acted with full knowledge of all

the circumstances. I have no doubt that the plaintiffs, with-in the case of *Hughes* v. *Wheeler*, 8 Cowen, 77, were enti-tled to recover upon the money counts on the note which was given up, and had the question been presented on the trial, the verdict might have been sustained upon that ground. But as the defendants may have some other defence to the notes that were given up, and which does not appear upon the record in this case, the safer course is to reverse the judg-ment and order a *venire de novo.* I shall therefore vote to reverse the judgment in this case.

On the question being put, *Shall this judgment be revers-ed?* the members of the court divided as follows :

*In the affirmative :* Senators Fox, Hull, Hunt, Hunting-ton, Johnson, Lee, Maynard, Nicholas, Powers, Ster-ling, Wager, Works—12.

*In the negative:* The President of the Senate, The Chancellor, and *Senators* Furman, Hawkins, Hunter, Jones, H. A. Livingston, Mosley, Paige, Peck, Skinner, Spraker, Van Dyck, Verplanck—14.

Whereupon the judgemnt of the supreme court was af-firmed.