WARDWELL *vs.* S. W. HAIGHT and F. M. HAIGHT:

Upon the dissolution of a copartnership, actual notice thereof must be given to persons who have had dealings with the firm; who have given it credit; or who have had business relations with the partners, by which a credit has been raised, on the faith of the copartnership; and who have relied on the united credit. Otherwise the partners will continue liable for the acts of each other, in using the partnership name, after the dissolution.

Who are to be considered dealers with, or customers of, a firm, so as to entitle them to actual notice of its dissolution.

As to all persons who have had no previous dealings with a firm, the notice of its dissolution must be a reasonable one. It need not be in a newspaper, but may be in some other proper manner. But it must be public and notorious, so as to put the public on its guard. *Per* EDMONDS, J.

MOTION by the defendant, F. M. Haight, to set aside report of a referee.   In May, 1841, the defendants formed a mercantile partnership in Rochester under the name of S. W. Haight & Co.   S. W. Haight and their clerk went to New-York about that time to make their purchases for the business, and took with them a letter from F. M. Haight, in which he declared himself " so far interested in the business as to be liable for the debts contracted in the course of it."

In July, 1841, F. M. Haight sold out his interest to his brother Robert; but the business was continued under the same name until 1843, when the firm failed.   No notice of the dissolution of the copartnership existing between S. W. and F. M. Haight, was given until the 21st of October, 1842, when it was published in a Rochester paper.   The dealings of S. W. Haight & Co. with the plaintiff consisted of a purchase of goods for cash, in May, 1841 ; a purchase on credit in June, 1842, the amount of which was paid ; and three several purchases on the 27th of October, and the 2d and 18th of November, 1842, for which this suit was brought.   There was no evidence that the Rochester newspaper had ever come to the knowledge of the plaintiff, or that any notice had been given to him of the dissolution.   The referee reported in favor of the plaintiff, for the amount of his claim.

*W. C. Noyes*, for the defendant F. M. Haight. I. The declarations of Samuel W. Haight were not competent evidence; especially as his liability was not contested, and as the only object of the evidence was to implicate, in some way, the defendant F. M. Haight. II. If F. M. Haight was a partner in the firm, he was a dormant partner, and having sold out his interest, and actually retired, prior to the creation of the debt for which the action was brought, he was not liable at all. But if he was a full partner, having retired and given due notice thereof in the newspaper published at Rochester, where the business was carried on, he was not liable for the goods sold to the new firm; especially as it is not pretended that the plaintiff ever knew, or had heard, of his having any interest, whether as dormant partner or otherwise. He was a dormant partner. (*Coll. on Part.* 3, *and notes. Mitchell* v. *Dall*, 2 *Har. & Gill*, 171.) He sold out to R. Haight July, 1841; and the goods were sold after 27th *October*, 1842. (*Cochran* v. *Perry*, 8 *Watts & S.* 262.) The notice was published in Rochester, October 18th and 20th, 1842. There is nothing to take the case out of the rule, except the fact that a bill of goods was sold in May, 1841. But this was a sale for cash, and there is no evidence that the plaintiff knew F. M. Haight ever was a partner. (2 *Bell's Com.* 640. *Barnard* v. *Torrance*, 5 *Gill & John.* 383. *Mowatt* v. *Howland*, 3 *Day*, 353. 1 *Hill*, 578, *and note. Bank of S. C.* v. *Humphrey*, 1 *McCord*, 388. *Story on Part.* § 159, *p.* 246. *Merry* v. *Graves*, 6 *Cowen*, 701. *Coll. on Part.* 310, 11, 12. *Carter* v. *Whully*, 1 *Barn. & Adol.* 11.) The report should therefore be set aside.

*S. Sherwood*, for the plaintiff. To establish the partnership between the defendants, which is put in issue by separate pleas of both defendants, the admissions of either may be given in evidence to prove him a partner of the other defendant. And the letter of S. W. Haight & Co. of 20th August, 1842, written by S. W. Haight, was competent evidence to shew that he was a partner of F. M. Haight, and that he continued so till its date. The verbal concession that S. W. Haight was a member of the

Wardwell *v.* Haight.

firm of S. W. Haight and Co. does not admit that S. W. Haight was a partner of F. M. Haight, which was the issue. The party may make proof, if the fact was conceded, in preference to taking the admission. The statement of Bryan, the clerk, of the names of the persons composing the firm of S. W. Haight & Co., made in the presence of S. W. Haight, was competent evidence to shew that S. W. Haight was a partner of F. M. Haight, and that the firm name was S. W. Haight & Co. The third exception mistakes the testimony of Eggleston. He proved the hand-writing of F. M. Haight to the letter of May 6th, 1841, and whether the plaintiff saw the letter of F. M. Haight or not, is immaterial; as it proves the fact of his partnership and liability. The question, who composed the firm of S. W. Haight & Co., was a proper question. The testimony of Thomas was proper to shew what Bryan said in the presence of S. W. Haight, in establishing that S. W. Haight was a partner of F. M. Haight. The whole proof authorizes the report of the referee. The confessions of both partners, that they were partners of each other, shewn by the letters and statements, as well as the notice of dissolution published by the partners, 18th of October, 1842, establish the existence of the copartnership. The defendants having been in business from 6th of May, 1841, to 19th of October, 1842, when they published their notice of dissolution in a Rochester paper, and having become dealers with the plaintiff, they were bound to notify him of the change, if any was made. Dealers with a firm are entitled to actual notice of dissolution, before they can be affected by it. (*Nat. Bank* v. *Norton*, 1 *Hill*, 578. 22 *Wend.* 183, 191. 2 *Bell's Com.* 640. *Sen. Verplanck's opinion*, 22 *Wend.* 194 *to* 198.) A credit already raised on the faith of the partnership is presumed to be continued on the same footing, unless special notice of a change shall be given. Notice must be brought home to the party.

*By the Court,* EDMONDS, J. The only question presented by this case is as to the liability of F. M. Haight. He was confessedly a partner, and liable for the contracts of the firm of S.

W. Haight & Co. in May and June, 1841, when their first purchase was made of the plaintiff. He was not a member of the firm, when the purchase out of which this suit has grown was made; and his liability therefor depends upon the questions whether he was bound to give notice of the dissolution, and if so, whether he had given the proper notice. He was not a dormant partner, and therefore had no right to retire without giving notice. So far as dealers with, or customers of, the house were concerned, the notice must be an actual one. As to all the rest of the world it might be by a publication in a newspaper at the place where the business of the firm was carried on.

No actual notice having been given to the plaintiff, the liability of F. M. Haight to him would depend upon the question whether he was a dealer or customer of the firm; or, if he was not such, whether the notice published in a newspaper at Rochester was sufficient. Upon the latter point I have my doubts, even if the plaintiff is not to be regarded as a customer or dealer of the firm, in the sense in which those words are used in this connexion. The notice was published in Rochester only six days before most of the goods were purchased in New-York. In the case of *Bristol* v. *Sprague*, (8 *Wend.* 423,) one of the defendants sought to relieve himself from liability on a note given in the partnership name, the next day after a dissolution, on the ground that there had not been time to publish the notice. But his objection was overruled, because the partnership obligation continues until notice is given, and the responsibility of the good faith of the partners rests upon the members of the firm until notice; and innocent parties cannot be affected by an abuse of confidence by either member of the firm. The notice must be a reasonable one. It need not be in a newspaper; it may be in some other public or notorious manner. But whether in a newspaper or otherwise, it must, so far as strangers and persons who are not dealers with the firm are concerned, be public and notorious, so as to put the public on its guard.

In this case, the fact of the dissolution was concealed from the public some fifteen months. In the mean time, and more than a year after the dissolution, the remaining member of the

firm, in seeking to obtain a reference in New-York writes to his correspondent that F. M. Haight is the partner. Immediately upon the publication at Rochester of the notice of the dissolution, so long withheld, and before that notice would be likely to obtain any publicity at New-York, he hurried to the city, and made purchases, without notifying those he dealt with that the member of the firm, on whose responsibility alone it seemed to have obtained credit, had long since retired. The referee may well have doubted whether this was such a notorious and public notice as good faith demanded. And for aught that we can see, he may have rested his report on that consideration, in connexion with the principle that he who by his own act enables another to abuse the confidence reposed in him ought to be the person to suffer from such abuse, rather than innocent parties. If he has done so, I am not prepared to say that his decision in that respect ought to be disturbed.

But I am inclined to think that the plaintiff was entitled to actual notice, and that he properly comes within the class of "dealers or customers" who have a right to exact that. In this case there were only two transactions between the parties, before the purchase in question. And we have not been referred to any case in which so small a number of transactions have been held to create the character of a dealer or customer; yet the principle on which the rule is founded justly embraces such a case. That principle is that credit already raised on the faith of the partnership is presumed to be continued on the same footing, unless special notice of a change be given. (2 *Bell's Com.* 640.) And the cases requiring actual notice apply it to those who have had dealings with the firm; (*Graves* v. *Merry*, 6 *Cowen*, 705 ;) who have given them credit; (*Vernon* v. *Manhattan Company*, 17 *Wend.* 527 ;) who have had business relations with them by which a credit is raised on the faith of the partnership. (*S. C. in error*, 22 *Wend.* 191.) And notice by advertisement has generally been held to serve in respect to all persons who had no previous dealings with the firm. (2 *Phil. Ev. Cowen & Hill's Notes*, *No.* 780.) All others must have special notice. (*Martin* v. *Watson*, 1 *McCord*, 16.

*Ketcham* v. *Clark*, 6 *John.* 144. *Graham* v. *Hope, Peake's N. P. Cas.* 254. *National Bank* v. *Norton*, 1 *Hill's Rep.* 578, *note.*) In the case in 17 *Wend.* 525, Cowen, J. remarks that the doctrine that actual dealing by a firm with its creditors requires actual notice of dissolution, is well settled by authority, and the chancellor, in 22 *Wend.* 191, in commenting on the word dealing, within the meaning of the rule which requires actual notice, says it is to convey the idea of one who has had business relations with the firm by which a credit is raised on the faith of the copartnership. Senator Verplanck, in the same case, p. 196, speaks of dealers as those who were known to have relied on the united credit and might be induced to rely upon it again, if left in ignorance of the change.

In every aspect of the rule thus stated, the plaintiff was entitled to actual notice of the dissolution. He had had dealings with the firm; he had given them credit; he had had business relations with them by which a credit was raised on the faith of the partnership: and he had relied on the united credit. And being left in ignorance of the change, had been induced to rely upon it again, even after the responsible member had, without his knowledge, withdrawn from the firm.

The referee was therefore right; and the motion to set aside his report must be denied.