Moncrief, J.,
delivered a written opinion, which, after stating the facts of the case, proceeds as follows:
Collyer on Partnership, section 530, states the rule to be, that “all the partners maybe bound, after the dissolution of the partnership, by a contract made by one partner in the usual course of business, and in the name of the firm, with a person who contracted on the faith of the partnership and had no notice of the dissolution. The principle on which this responsibility proceeds, is the negligence of the partners in leaving the world in ignorance of the fact of the dissolution, and leaving strangers to conclude that the partnership continued, and to bestow faith and confidence on the partnership name in consequence of. that belief; and where one of two innocent persons must suffer from giving a credit, he who has misled the confidence of the other, and has been the cause of the credit, either by his representation or his negligence or his fraud, ought to suffer instead of the other.” Story on Partnership (§ 160) says: “ Unless the ostensible partner, who has retired from the firm, suffers his name still to appear as one of the firm, so as to mislead the public, (as by its *10 being stated and still remaining in the firm name,) he will not be liable to mere strangers who have no knowledge of the persons who compose the firm, for the future debts and liabilities, notwithstanding his omission to give public notice of his retirement, for it cannot be said in such cases that any credit is given to the retiring partner by such strangers. Every new creditor or new customer is bound to inquire who are the parties really interested at the time in the firm, if he would be safe in his credit and dealings with them.”
All the cases cited in the argument are cases where an ostensible partner is sought to be held liable for a debt contracted in the old firm name; or by a dealer with such firm not having had notice of dissolution.
A dormant partner is only chargeable to third persons in respect of contracts entered into by the firm during the time he is actually a partner and is receiving the emoluments and profits of the business, for third persons have never trusted to his credit. The dormant partner is liable during that time, because he is in fact a contracting party, taking a part of the profits of such contracts ; but when he ceases to be in fact a partner, the reason ceases, and he is no longer liable. (Coll. on Part., § 536, 3d Am. ed.; 4 Esp., 89; 5 Cow., 534.)
The name of Butterworth never appeared as a member of either firm. He was known to have been the capitalist and interested'with Tupper as a member of the firm, doing business in the name of “ The Atlantic Forge,” and not otherwise. It was as a member of that house one of the plaintiffs had heard of him, and to which he claims to have given credit in this particular transaction. He cannot sustain such a claim, because he gave the credit either to C. H. Tupper, or C. H. Tupper & Lee, and for the reason that he had notice of a change in the name of the firm upon the receipt of the note. He had notice by the new sign with the new firm name thereon. He had notice by the new firm name signed' on the note received for the iron. (See 16 East., 169; 3 Camp., 147.) That was a clear, distinct and unmistakable notice. A fair presumption of actual notice can be raised from circumstances that will be sufficient. (1 Smith’s L. C., p. 978, old p. 505.) As a matter of fact, it was not disputed that Butterworth was in no wise interested in business at Ho. 268 Eleventh *11 street, after March 1, 1855. This transaction occurred seven months afterwards, (in October, 1855.) He cannot be held as a dormant partner, because he was not interested in its profits, and the partnership never did include him. He could not be held liable after his retirement, for the reason that the firm name did not include him, though that name had remained the same. (See Coll. on Part., § 536, pp. 488,489; 1 Barn. & Adol., 11; 5 Cow., 534; Story on Part., §§159, 160, &c.; 1 Esp., 182.)
If it be true, as contended by the plaintiffs, that a liability against Butterworth could arise from the fact that he was somewhat .generally known, or reputed to have been a partner in business transacted at a particular place, then it should follow as a necessary consequence that his discharge could be shown by the same publicity or notoriety as to his disconnection or withdrawal prior to the making of the contract.
The jury found, as matter of fact, that it was a matter of public notoriety that the firm was changed on and after March 1, 1855; and it seems to me that the plaintiffs would be as much bound to hear what was said by public report or rumor, as they are supposed to see what may be published in a newspaper. Either method of conveying information is somewhat uncertain and dependent upon circumstances materially different from actual notice.
The other exceptions being thus disposed of, in this view of the case, it is unnecessary to consider the particular language of instruction to the jury. Even if erroneous, it could not affect the right of the defendant to judgment.
The judgment should be affirmed, with costs.
Hoffman, J.
This case has some particularities distinguishing it from the leading authorities upon the subject. The plaintiffs had not in any sense dealt with the old firm, of which Butterworth was a member. He was not then called upon to give actual notice of his retirement to persons who had not had transactions with the firm, much less with himself personally. Hor can the question arise, whether any degree of publicity by newspaper advertisement or circulars, could be, under any circumstances, a substitute for actual notice, as to previous *12 dealers. (Clapp v. Rogers, 2 Kern., 283; Vernon v. The Manhattan Co., 22 Wend., 183; Graves v. Merry, 6 Cow., 701.)
Again, the case is not governed by authorities tending to show that as to subsequent dealers, a publication of a dissolution in newspapers printed in the place of business, would, under certain circumstances, be "sufficient. (Ketchum v. Clark, 6 Johns. R, 144; Collyer on Partnership, § 532 and note.) All that has been urged or cited upon these points appears to us inappropriate.
The case presents these important particulars. It was a matter of public notoriety that Butterworth was a member of the old firm up to the 1st of March, 1855. It is in proof that the plaintiffs heard of his connection with it as early as 1853, and had not heard of his retirement until after December, 1855, the period of the failure - of the new firm. One of the plaintiffs swears that he supposed Butterworth was a partner, when the sale of the iron was made. No advertisement of a dissolution was ever published. But the jury have found that it was matter of public notoriety, that the firm was changed after the 1st of March, 1855.
If the head note to Davis v. Allen, (3 Comst., 168,) is fully borne out by the decision, it would seem to involve the rule that when once knowledge of an existing partnership is possessed by a party actually, or is to be inferred from notoriety, notice of retirement must be traced to such party, or the partner will continue bound.
But the facts of the case show, that the plaintiff had worked for the firm from 1833 to 1843, and that Child, the defendant, was a partner from 1832 to some time in 1840. The work sued for was performed between the 1st of June and the 26th of November of that year, after the 'time when Child ceased to be a member.
The Court held that it must be inferred from the facts found by the referee, that Child was known to the plaintiff to have been a partner by direct transactions, or public notoriety. An omission to give notice of retirement was equivalent to a continued representation of his remaining a partner. »
“The report necessarily involves a finding that Child was thus known to the plaintiff,” that is, as a partner and so known in one mode or the other, by direct transactions, or public notoriety.
*13 Therefore, as the finding may have been that he was actually known, and through direct transactions, to be a member of the firm, the decision may justly be placed upon that ground. It is not a necessary consequence that if the source of information had been nothing but repute, actual notice of retirement would have been equally essential.
In Farrar v. Defflinne, (1 Carr. and Kir., 580,) the defendant and one Todd had been in partnership from 1834 to 1837. The defendant was a dormant partner; but much testimony was given to show that the plaintiff had been aware of his being a partner, and had not been made acquainted with the fact of his retirement. That had taken place before the claims sued upon arose. Cress-well, J., put it to the jury thus: The question for you is, was this partnership actually known to the plaintiff either by general report or by direct communication ? If it was, and he did not know, either from notice of the fact or from surmise, that the dissolution had taken place, you may infer that he still dealt on the faith of the partnership, and the defendant will therefore be liable. The plaintiff had dealt with the firm during the partnership, and afterwards. I think that the phrase “ surmise ” used by the learned judge may be treated as equivalent to “repute.” Lord Kenton in Godfrey v. Turnbull, (1 Esp., 371,) where notice had been given in the Gazette, and the case was of a plaintiff who had not previously dealt with the firm, and the defendant had retired before the bill sued on was given, said: “ If the dissolution be notified in the ordinary way, in the only way in which the fact of dissolution can be promulgated, (at least to those who have had no previous dealings with the partners,) it seems sufficient at least to be left to the j ury from thence to infer notice.”
In the Tombeckbee Bank v. Dumell & Lyman, (5 Mason, 56,) it was held that a bill accepted after a dissolution, though drawn before, did not bind a retiring partner, who had announced the dissolution by a public advertisement at the place of business.
Dobbin v. Foster, (1 Carr. and Kir., 323,) was a case in which the retiring partner was originally bound to the plaintiff. Although his retirement was known, there was not enough to show a relinquishment of that original liability.
There is a marked line of distinction between cases of a previous dealing with a firm of which the party to be charged was *14 known to be a partner, or of which dealing he received, or might have received a benefit in profits, and cases of a dealing for the first time after the party had retired, and the credit was ostensibly given only to the parties forming the new firm.
When a plaintiff rests only on the common notoriety of a person having been a partner, to make him liable for a contract made after his retirement, an equally common notoriety of retirement or dissolution must be sufficient to exonerate him. If without actual personal knowledge or actual dealing, the ground of notoriety can be presumptively sufficient to fix a responsibility upon a party, the same ground of general repute should operate in his favor, which operates, against him. This is the case before .us upon the verdict of the jury.
There remains one question. What is the effect of the evidence of one of the plaintiffs, that he supposed Butterworth continued a partner, when the sale "of the iron was made ?
It is apparent that the danger of receiving such evidence is great, especially since the admission of parties to testify on their own behalf. The defendant in such a case must be defenseless, unless he can prove actual notice of the dissolution brought home to the plaintiff.
The plaintiff, James H. Holdane, has not sworn that he made the bargain in this case, nor is there one word of corroborative evidence tending to show any reliance upon Butterworth’s credit.
The judgment should be affirmed, with costs.
Bosworth, Oh. J.
The proposition is not controverted; that after the dissolution of a firm properly notified, no new contract by the continuing firm can bind the partner who retires.
A notice of dissolution published in the Gazette before a new contract is made, has been held to be an answer to an action by a person having no previous dealings with the firm, whether he’ saw such notice or not. (Collyer on Part., p. 311, § III., Perkins’ 3d ed., § 534.)
“ Public notice, in some reasonable and sufficient manner, must be given, and that will conclude all persons who have had no previous dealings with the firm.” (Ketcham & Black v. Clark, 6 J. R., 148.)
*15 The jury found it was “ a matter of public notoriety that the firm was changed on and after ” the 1st of March, 1855. The plaintiffs’ proposition to sell the iron in question was made by a letter dated the 8th of October, 1855. On the 10th they took for the iron a note made by “0. H. Tupper & Lee,” the new firm. The firm of which Butter worth was a member, never did business in that name. When the new firm was formed an old tin sign on the front office was taken down and changed, and a new sign put up with the names “0. H. Tupper & Lee,” thereon. Printed circulars stating the dissolution of the old firm and the formation of the new one, and who composed the latter, were sent by post to all who had dealt with the old firm. Butter-worth did not appear in the business, nor had he anything to do with it, after the dissolution of the old firm.
Tinder such circumstances, the fact that the dissolution of the old firm was a matter of public notoriety, should protect an out going partner, as against a person who never dealt with the old firm, and who, after the lapse of more than six months after the dissolution, sells goods to the new firm, and takes its note therefor, signed in the new firm’s name, although he transacted the business with one who had been a member of the old firm.
Public notoriety of the fact of dissolution is sufficient notice to all persons who never dealt with the old firm.
It is an extravagant claim, when made by persons dealing with the new firm after the lapse of months from the time of its formation, and taking the note of the new firm, that the sale was made on the credit of the retiring partner, and on the faith that he was a member of the firm, especially when it is not pretended that he ever did business in that name, but on the contrary it is proved that the name of his firm was entirely different.
I think the facts proved entitled the defendant to a verdict and that the judgment should be affirmed.
Judgment affirmed.[1]

 Since the above cause was decided, the City Bank of Brooklyn v. McChesney et al., (20 N. Y., 240,) has been decided by the Court of Appeals. The latter case seems to hold that publication of a dissolution of a partnership in a newspaper, is requisite to protect the retiring partner from liability to one subsequently and in good faith taking a note made in the firm’s name after such dissolution; although the person so taking it had not been a dealer with the firm, but had knowledge of its prior existence and not of its dissolution.
The reason why notice of the dissolution of a partnership published in “ the Gazette in England,” has been held a sufficient notice to those who have not dealt with the firm, whether
*16 actually seen or not, as stated by Lord Abinger, C. B., in Hart v. Alexander, (7 Carr. & P., 746,) is that “ the Gazette in England is the usual evidence of a dissolution of partnership, even against persons who are not proved to have read the Gazette at all, because a person, not knowing who may trust a firm hereafter, announc.es bis leaving it by an advertisement in the Gazette.”
It is not intimated that publication of such a notice in any other newspaper, would be equally a protection to the retiring partner.
There is no particular newspaper in the city of New York, in which notices of dissolutions of partnerships are exclusively published, or in which it is expected they may be found. So that publication in a newspaper not taken by a person seeking to charge the retiring partner would not be likely to inform him of the withdrawal of such person from the firm.
If publication in a newspaper, though the publication be not seen and cannnot ordinarily be expected to be seen, is to protect a retiring partner, it must protect him on the ground, that such a notice is all that can be reasonably required, by persons who had not dealt with the firm during its existence.
If public notoriety of the dissolution of a partnership and of the formation of a new firm with a new partnership name, will not protect the retiring partner from liability to a person who had no previous dealings with the firm and who subsequently sells goods to the new firm and takes the note of the new firm therefor; then the only ground of exemption would seem to he (no notice of the dissolution having been published in any newspaper) that such person had actual notice of the retirement of the withdrawing partner; and the question of actual notice would seem to be one of fact, to he shown by direct evidence, or by circumstances that would justify a jury in inferring it. (Hart v. Alexander, 7 Carr. & P.; 746; Ketcham & Black v. Clark, 6 J. R., 146.) UA general notice, by advertisement or otherwise, should he sufficient for those who know the firm only by general reputation.” (Verplanck, Senator. 22 Wend., 194.)
However, much doubt may be created as to the accuracy of the decision in Holdane v. Butterworth, by the case in 20 N. Y. R., 240; the questions involved are deemed of sufficient importance to justify the reporting of it. . . Rep.