BOUKER CONTRACTING CO. v. SCRIBNER.

(Supreme Court, Appellate Division, First Department. June 22, 1900.)

1. PARTNERSHIP—DORMANT PARTNER.
    A party who, by a partnership agreement, is not to give any services in the business except to consult with the other partners, and use his influence to obtain business, is not a dormant partner.

2. SAME—NOTICE OF DISSOLUTION.
    Actual notice of dissolution must be given to those having had previous dealings with a firm, and in default of such notice the retiring partner remains liable to subsequent dealers of the firm who are ignorant of the withdrawal.

3. SAME—DEALINGS—REQUIRING NOTICE OF WITHDRAWAL.
    In an action to recover against a partner who had withdrawn from a firm, that the firm communicated with some one connected with plaintiff with reference to the price of store wanted by it, but no contract was then made, nor material supplied until after defendant's withdrawal from the firm, is insufficient to show any such dealing with the firm while defendant was a member as to entitle plaintiff to notice of his withdrawal.
    Ingraham, J., dissenting.

Action by the Bouker Contracting Company against G. Hilton Scribner. Motion by defendant for new trial on exceptions ordered to be heard in the first instance at the appellate division. Exceptions sustained, and new trial ordered.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

Edward C. James, for the motion.
James M. Gifford, opposed.

PATTERSON, J. This cause comes before us upon exceptions ordered to be heard in the first instance at the appellate division. Upon the trial a verdict was directed for the plaintiff, who sought to recover from the defendant the amount of an indebtedness represented by promissory notes made by the firm of Fogg & Scribner, of which the defendant was at one time a member. The co-partnership was constituted by written articles of agreement dated July 16, 1889, between John C. Fogg and G. Hilton Scribner (this defendant) and Gilbert Hilton Scribner. It was to continue for five years. This defendant made a contribution of capital, and was to share in the profits. The written articles provide that this defendant "shall not

be required to give any services in the business of said firm except to consult with the other partners, and use his influence to obtain business for the same, to be used and employed in common between them for the support and management of the said business to their mutual benefit and advantage." The firm name was Fogg & Scribner. Its business was "general contract work, such as the building of railroads, the putting in of municipal waterworks, pipe laying, pile driving, dredging, and doing all kinds of rock and earth excavating, pier building, coarse masonry, first, second, and third class piers for bridges, quarrying stone, and every kind of like work, on commission, and also in the buying and selling and vending all sorts of goods, wares, and merchandise to the said business belonging." This defendant continued to be a member of the firm until the 1st day of February, 1890, when he retired, but notice of such withdrawal was not given the plaintiff. The business of the firm was continued by the other partners without change being made in the firm name and style. Subsequent to the retirement of the defendant from the firm, the plaintiff supplied to it certain material, which was used in the performance of a contract which the firm had made with the city of New York for certain work during the time the defendant was a member of it. The plaintiff's officers were not aware of the defendant's connection with the firm. Promissory notes were given for the indebtedness, and upon the maturity of such notes an action was brought by the plaintiff against Fogg and Gilbert H. Scribner, as co-partners, for unpaid amounts thereof, and judgment was rendered against them. Thereafter, and upon the ascertainment by the plaintiff that the present defendant had been a member of the firm, this action was brought to charge him with liability as a partner, the complaint containing appropriate allegations. The defense is that no liability existed, the defendant having retired from the firm, and the transactions out of which the indebtedness of Fogg & Scribner to the plaintiff arose having been entered into subsequent to the retirement of the defendant from the firm, and it is claimed that he was a dormant partner.

On the proofs as they appear in the record we must hold that the defendant was not a dormant partner. It certainly was not contemplated by the parties to the agreement of co-partnership that he should refrain from active participation in its affairs. He was to use his influence to obtain business for the co-partnership, and that business was to do general contract work of the character mentioned in the quotation from the articles of co-partnership above made. He was to be active in the procurement of business,—that is, in obtaining contracts for the benefit of the firm; and it is in evidence that he did actively participate in the procurement of a contract with the city of New York. He was not known to this plaintiff as a partner, but that does not necessarily make him a dormant partner. In Rolling-Mill Co. v. Harris, 124 N. Y. 280, 26 N. E. 541, Judge Parker, in the opinion of the court, refers to various definitions of a dormant partner, citing, among others, one from Bank v. Thomas, 47 N. Y. 15, viz.: "A dormant partner is one who takes no part in the business, and whose connection with the business is unknown. Both

secrecy and inactivity are implied by the word." Upon the facts as they appear on the record in the case at bar, we must hold that the defendant was a general partner, and that, in order to relieve himself from liability for the indebtedness of the firm of Fogg & Scribner to this plaintiff, it would have been necessary for him to give actual notice to the plaintiff, or bring home to it notice, of his retirement from the firm, provided the plaintiff stood in the position of one having had business dealings with that firm while the defendant was actually a member of it. The rule is well settled in the state of New York that actual notice of dissolution must be given to those having had previous dealings with the firm, and in default of such notice the retiring member remains liable to subsequent dealers with the firm if such dealers were ignorant of such withdrawal. Austin v. Holland, 69 N. Y. 571; Howell v. Adams, 68 N. Y. 314; Bank v. Herz, 89 N. Y. 629; Rolling-Mill Co. v. Harris, supra. The point on which this case turns relates to the plaintiff having had such dealings with the firm of Fogg & Scribner, before the withdrawal of the defendant, as to require actual notice of that retirement to be given. The plaintiff was undoubtedly entitled to enforce liability for its claim against all those who were general partners in the firm of Fogg & Scribner, whether it knew of the composition of the membership of that firm or not, if it gave credit to the firm while the defendant was a member. What constitutes such a dealing as would entitle a creditor to actual notice of dissolution it is difficult to bring within the scope of a general definition. In Austin v. Holland, supra, the court says:

"In Vernon v. Manhattan Co., 22 Wend. 190, the chancellor said the word 'dealing' is merely used as a general term to convey the idea that the person who is entitled to actual notice of the dissolution must be one who has had business relations with a firm by which a credit is raised upon the faith of the co-partnership, and this statement of the chancellor is recited with approval by Denio, J., in Clapp v. Rogers, 12 N. Y. 286."

The material inquiry in this case being that above stated, we confine our decision to that single point. It is the only one necessary for us to consider. The case was disposed of in the court below on it and no other. The record raises no other question.

It appears that the first communication ever had between the firm of Fogg & Scribner and the plaintiff was contained in a letter of inquiry dated December 14, 1889, addressed to some one connected with the plaintiff, asking for a quotation of prices for a certain quantity of stone for crib filling at East 138th street, Harlem river. No relations whatever were established between the parties by or in consequence of that letter. Mr. Bouker, the president of the plaintiff, testified that after receiving that communication, and on the 6th of January, 1890, he made a contract with Mr. Fogg, one of the firm of Fogg & Scribner, to furnish stone mentioned in that letter. If that were all upon that subject, it would follow as a matter of course that the plaintiff had dealings directly with the firm of a business character, and which would authorize the inference that relations were entered into upon the credit of the firm before the retirement of the defendant; but on his cross-examination Mr. Bouker swears that there was no time fixed at which stone was to be ordered,

nor how much was to be ordered, except that it was up to about 25,000 cubic yards, and that it was subsequent to that time that a price was agreed upon for stone to be furnished. It is quite evident that no contract was then made or obligation entered into by Fogg & Scribner. No material was furnished by the plaintiff until February, 1890,—after this defendant retired from the firm. The evidence is entirely insufficient to show that any business relations were entered into between the plaintiff and the firm of Fogg & Scribner from which the inference can be drawn that credit was given to the firm until orders were given or goods supplied in February, 1890. We are of opinion, therefore, that the plaintiff failed to show that it had such dealings with the firm of Fogg & Scribner, while the defendant was a member of it, as entitled the plaintiff to actual notice of the withdrawal of the defendant, or as threw upon the defendant the burden of showing that the plaintiff knew that he was not a member of the firm at the time it supplied the stone for the value of which the promissory notes sued on were in part given. In consequence of this condition of the record, we are led to the conclusion that the exceptions should be sustained, and a new trial ordered. As said before, we confine our consideration of the case to the single point we have discussed, which is the only one properly raised by the record.

Exceptions sustained, and a new trial ordered, with costs to defendant to abide the event. All concur, except INGRAHAM, J., who dissents.

INGRAHAM, J. (dissenting). I think the plaintiff was entitled to a verdict. Accepting as correct the statement in the prevailing opinion that "the plaintiff was undoubtedly entitled to enforce liability for its claim against all those who were general partners in the firm of Fogg & Scribner, whether it knew of the composition of the membership of that firm or not, if it gave credit to the firm while the defendant was a member," then I think the plaintiff was entitled to recover. Undoubtedly, the transaction must have been such as involved a credit given to the firm of which the defendant was a member. As was said by the chancellor in Vernon v. Manhattan Co., 22 Wend. 190: "The word 'dealing' is merely used as a general term to convey the idea that the person who is entitled to actual notice of the dissolution must be one who has had business relations with a firm by which a credit is raised upon the faith of the co-partnership;" and this has been approved by the court of appeals. The "dealing" which the plaintiff had with this firm prior to the institution of the new firm was a business relation, which directly resulted in the giving of credit to the firm, under which stone was subsequently delivered. The new firm was constituted by an agreement dated February 1, 1890. The firm that had transacted business before that, and of which the defendant was a member, on the 14th of December, 1889, wrote to the plaintiff as follows: "Dear Sir: Will you kindly quote us price for say 25,000 cu. yds. stone for crib filling at East 138th Harlem river. Respy., Fogg & Scribner." This was an invitation to make a tender for the delivery of the stone for a work which the old firm was under contract to perform for

the city of New York. In answer to this letter, the plaintiff's president had several interviews with members of the firm of Fogg & Scribner prior to the organization of the new firm. The result of the negotiation was an agreement by the plaintiff to furnish 25,000 cubic yards of stone to put in a crib on the Harlem river at or near 138th street, which was finally consummated on the 8th of January. This understanding, which was called by the plaintiff's president "a contract," was verbal; and, as testified to by him:

"I agreed to furnish him [the defendant firm] the stone such as he would order at so much a cubic yard to him. And there was no time particularly fixed when he was to order it, or how much. It was up to about 25,000 cubic yards. more or less, for the crib to be filled. He was to order it any time he saw fit; and subsequent to that time we had agreed upon the price, which was 65 cents. At any time he sent me, word they needed 'stone, I sent it around."

It seems to me that it was immaterial that this was a mere verbal contract, which might have been avoided as within the statute of frauds. The negotiation was then complete. The parties had arrived at an understanding under which the plaintiff acted in delivering the stone and under which the defendant acted in receiving it. This agreement was between the plaintiff and the firm of which defendant was a member. The stone was purchased for and was actually used in the completion of a contract made between the old firm and the city of New York, which, so far as appears, was never formally transferred to the new firm. One of the members of the new firm testified that this contract with the city of New York was uncompleted at the time the new firm was organized, and that the new firm "took it over"; but it does not appear that the old firm was in any way released from its liability to complete its contract. There was no formal dissolution of the old firm; no notice was given to the plaintiff that a new firm had been organized, which would carry out and be liable for the arrangement under which the stone was to be delivered; and, so far as appears, no formal transfer of the assets of the old firm to the new firm. The arrangement under which the plaintiff's stone was furnished was made with the old firm. The stone so furnished was used for the completion of a contract made by the old firm, and which the old firm was bound to complete, and which, so far as appears, was actually completed by either the old firm or the new firm acting for it. Thus, the business dealing was directly with the old firm. The credit that was given was under the arrangement made with the old firm, and it was to the old firm that the plaintiff had a right to look for the payment of the stone furnished under this verbal agreement, and for such stone I think the old firm responsible.