Touley, J.,
 

 delivered the opinion of the court.
 

 Thos. M. Pryor and Mark Hutchins were for many years partners in trade, in buying and selling goods in the town of Winchester, Tennessee; under the name of T. M. Pryor & Co., to wit, from the 18th day of November, 1826, till some time in September 1844.- During the continuance of this partnership, the Branch Bank of the State of Tennessee at Shelby-ville, discounted paper for them, upon their endorsements, both notes and bills. This partnership was dissolved by mutual consent, and a notice thereof inserted in the Republican Banner, a newspaper printed at Nashville, on 23d day' of September 1844, a number of which was mailed by the, publishers at Nashville, to the Bank of the State at Shelby-ville, which was a subscriber thereto. Afterwards, the bank discounted a note of Wm. Dardis, for the sum of $440, bearing date, 7th February 1845, made payable to T. M. Pryor & Co., at four months, and endorsed by T. M. Pryor & Co., and A. Ochwig. The endorsement of T. M. Pryor & Co., was made by T. M. Pryor, and the note was discounted in renewal of another note for the payment of which T. M. Pryor & Co., were responsible. At the time the note of Dardis which was thus discounted, was executed to the firm and endorsed by it, T. M. Pryor had no legal power to bind the firm by such endorsement, the partnership having been previously dissolved, and no right having been reserved by the terms of the dissolution for the exercise of such a power — but on the
 
 *420
 
 contrary, the same being expressly prohibited. The principal controversy in this case, on the trial in the circuit court, arose upon the question, whether the bank had notice of the dissolution of the firm, at the time the note was discounted. Upon this question, there was much proof and of so conflicting a character, that in our opinion a verdict either way ought not to have been disturbed. In consequence whereof, the only question we deem worthy of our consideration now is, as to the correctness of the charge of the circuit judge to the jury who tried the cause. He said to them, “that if they believed from the proof, that a partnership once existed between Pryor and Hutchins, in the name of T. M. Pryor & Co., and was dissolved, and that the bank previous to the dissolution of the partnership, had in repeated instances, advanced to the firm-of T. M. Pryor & Co., money upon notes drawn and endorsed by it, such transactions would make- the bank a previous dealer with the firm; and under such a state of facts, to make the dissolution effectual, the bank would be entitled to actual notice of the fact of dissolution; and that an advertisement of the dissolution in a newspaper, would not of itself be a sufficient notice thereof. That if the dissolution of the partner-' ship was advertised in a newspaper, before the note sued on was discounted, and one or more of the directors of the bank, constituting the board which discounted the note, was in the habit of talcing and reading the paper, such circumstances would be facts conducing to prove actual notice. Yet, to warrant the jury in finding that the bank had actual notice, they must be satisfied from the evidence, either positive or circumstantial, that the president or some one or more of the directors, constituting the board at the time the note was discounted, either read the advertisement or knew of the dissolution. If the dissolution was advertised in a newspaper, and the president or one or more of the directors were in the habit
 
 *421
 
 of taking and reading the newspaper, but, in point of fact, did not read or know of the advertisement, the taking of the newspaper containing it, would not, under such circumstances, amount to notice the dissolution.”
 

 There is in this charge no error whatsoever. It asserts no new principle of law; none which is not well established by-repeated adjudications iu the courts of different commercial countries. The extent of the liabilities of partners upon contracts made and executed to third persons, both before and after the dissolution of the firm, is, perhaps, settled by a train of adjudged cases, as'well-considered as those upon any other subject whatever. And among the great variety of points determined in relation thereto, there is none more thoroughly established, nor upon better practical principles, than that which gives to previous dealers with the firm, the right to demand actual notice of the dissolution, before they shall be deprived of the right to hold'all the members of the firm liable for a contract made in good faith with one of them in the name of the whole, though there had been a previous dissolution.
 

 We do not deem it necessary or advisable to attempt,in this case to give an exposition of what would, in our estimation, constitute such previous dealing as applicable, as a principle, to cases in general — because it would be impracticable — every case depending upon its own particulars, and, therefore, to be-' judged of from them, and not from those of another.
 

 In the case under consideration, we are well satisfied, that the fact, that the bank had, during the existence of the partnership between Thomas M. Pryor & Co:, been in the habit of discounting for them in their names and upon their endorsements notes and bills, constituted the bank a previous dealer with them, and that it gave, in consequence, a right to the bank to > have actual notice of the dissolution.
 

 Now, though the proof shows, in this case, that notice of the
 
 *422
 
 dissolution was inserted in a number of the Republican Banner, to which newspaper the bank was a subscriber, and that it was sent in consequnce thereof to the bank, yet this of itself is not actual notice, as has been well settlgd. It is not like the case of a letter addressed by the firm to the dealer, giving him notice of the dissolution, which is direct notice, because it being proved, that the letter containing the information was written and delivered by private hand, or put in the post office, directed to the dealer at his usual place of residence, the pre sumption in law is, that the knowledge of the dissolution has been obtained, for it is his own fault if he read not the letter; ‘but not so with a newspaper; it is not sent by the firm, or any member of it, and, therefore, there is nothing to draw his attention particularly to it; he, therefore, may not read it at all, or if he does read it, it may be carelessly and superficially; and containing, as it always does, a variety of unconnected and dissimilar articles, the advertisement may well have escaped his observation. It has, therefore, been abundantly held, that this does not constitute actual notice, but is a circumstance to be left to the jury for their consideration in forming their verdict upon the fact of notice. And so the jurors were told by the court in this case. But it being proven by the president and directors, who constituted the board that discounted the note, that, notwithstanding, the reception of the paper containing the advertisement of the dissolution, they had no information communicated thereby of the fact, they found that the bank had no notice of the dissolution. With this verdict, the circuit judge was satisfied, and so are we — for though there is proof, upon which a different verdict would have been sustained by us, yet, we think, the testimony well warranted the finding.
 

 It has been argued, that to require actual notice to be given by a firm, of its dissolution, to every person who may have dealt
 
 *423
 
 in negotiable paper to which it may have been a party, either as drawer or endorser, and upon its credit, might and would be productive of serious mischief, as it would be impossible for a firm .to know all persons who may have been dealers in such paper. To this the answer is direct: — A firm is not bound to give such notice of its dissolution to persons who have not dealt with it, in relation thereto, though they may have dealt in paper, for the payment of which it is responsible, and upon the faith oí its name. The dealing must have been with it, and not with a third person. The buying of a note or bill of exchange, drawn or endorsed by a firm, from a holder or subsequent endorser, does not constitute the buyer a, dealer of the firm. The bill or note must be bought from the firm. A person cannot become a dealer with the firm without the consent of the firm; and, therefore, if he deal in the negotiable paper of the firm with' third persons, he, in every instance, takes such paper subject to the casualty of dissolution before it was executed — and this without the right to demand actual notice of the fact of the dissolution.
 

 The judgment of the circuit court will be affirmed.