## ROBERT A. GRINNAN *v.* BATON ROUGE MILLS COMPANY.

The factory of defendants was at Baton Rouge. They had, in connection with it, an office and agency in New Orleans, where they raised funds for the prosecution of its business, and where the partners resided, and where also the membership of *Peale* was well known. *Peale* retired from the company, and gave notice of his withdrawal in a paper published in Baton Rouge, but did not publish his retirement in New Orleans, where *Grinnan* resided. Held: A retiring partner is bound to use reasonable diligence, to inform the public. The extent of diligence must be measured with a reasonable regard to the circumstances of the case, and ought not to be brought down to the inflexible standard of publication at the partnership domicil, where such standard would expose the public to an inequitable risk. The retiring partner was held bound.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *Wolfe* and *Singleton,* for plaintiff. *Mathewson,* and *Hunton* and *Bradford,* for defendant. By the court:

SLIDELL, J. The question involved in this case is the liability of *Elijah Peale* to pay the bills sued on, as a partner in the Baton Rouge Mills Company, an unincorporated association.

The partnership domicile was at Baton Rouge. Its mills were established there, and its business was the making of bricks and sawing lumber. It had an office for the sale of its bricks and lumber in New Orleans, kept by an agent. Receipts to purchasers at this office, the transactions of which were however small, were made out in the name of the Baton Rouge Mills Company. It was assessed in New Orleans, by reason of this agency, upon the municipal assessment roll of 1850. Its members, including *Peale*, resided in New Orleans. The raising of funds for the company was accomplished in New Orleans, by means of bills drawn by its agent upon *McMain*, of New Orleans, one of the partners. A large amount of money was raised for the company in this way,

partly before, and partly after the withdrawal of *Peale.* He withdrew in the latter part of October, 1850. The drafts in question bear date in the following December. *McMain* had them negotiated through a broker to the plaintiff, in December and January. The plaintiff had previously, in the same year, discounted upon the application of the same broker a similar bill, and before doing so, was informed by the broker that *Peale* was a member of the company. He was a person in good credit, and the broker testifies that he represented to *Grinnan* on that occasion, and to others on like occasion, that *Peale* was a partner, because he considered that made the paper very good. The only notice of *Peale's* withdrawal was published in the Baton Rouge Gazette, on the 14th December, 1850. No actual notice is brought home to the plaintiff.

There was judgment below in favor of the plaintiff, and *Peale* now asks its reversal.

It is conceded that the case turns solely upon the sufficiency of the notice of the withdrawal, by publication in the Baton Rouge Gazette.

It is said that *Grinnan* must, under the circumstances, be considered as a previous dealer with the company, and therefore the case is one requiring proof of actual notice. This question is free from difficulty, as may be seen from the elaborate discussion upon the point, what constitutes a previous dealing, to be found in *Vernon* v. *Manhattan & Co.*, 17 Wendell, 527. 22 Wendell, 189, and other cases. We do not however think it necessary to decide whether the purchase of the previous bill ·by *Grinnan*, through a broker, put him on a footing of a previous dealer. For we are of opinion that the general notice, as given, was insufficient. To bind the New Orleans public, it ought, in our opinion, to have been published in New Orleans.

The general rule, as invoked by the defendant, is true, that as to those who have had no dealings with a firm prior to its dissolution, notice by advertisement in a newspaper of the city or county where the business is carried on, will suffice. But here, although the factory of the firm was in Baton Rouge, and so an important portion of its business was conducted there, yet an important portion of its business, the raising funds for its prosecution to a large amount, was carried on in New Orleans, where its partners lived, and where the membership of *Peale*, whose credit appears· to have been the most conspicuous, was well known; to which we are also to add the existence of the New Orleans office and agency above stated. Now, under such circumstances, to say the New Orleans public are to be held constructively warned of *Peale's* retirement by a notice in a Baton Rouge newspaper, whose ordinary circulation cannot be supposed to reach beyond the narrow sphere of a village journal, seems to us unreasonable. A retiring partner is bound to use reasonable diligence to inform the public. The extent of diligence must be measured with ·a reasonable regard to the circumstances of the case, and ought not to be brought down to the inflexible standard of publication at the partnership domicile, where such standard would expose the public to an inequitable risk. The defendant must be supposed to have been fully apprised of the mode in which the company was in the habit of raising money in New Orleans, and conscious of the credit his name gave the partnership. He might reasonably anticipate a similar course of financiering after his withdrawal, and a similar reliance in the New Orleans money market, upon his connection with the firm, unless he gave his retirement publicity here.

It remains only to notice a bill of exception taken to the rejection of *Frierson* as a witness, who was offered by the defendant.

GRINNAN
v.
BATON ROUGE
MILLS COMP'Y.

He was the husband of *Mrs. Frierson*, one of the defendants in this cause, and among other grounds was objected to, on the score of interest and incompetency, under art. 2260 of the Code, which provides, that "the husband cannot be a witness either for or against his wife." It appears from the evidence, that in October, 1850, *Peale* sold his interest in the company, to the remaining partners, one of whom was *Mrs. Frierson.* As between *Peale* and the other members of the company, it is clear that *Peale* does not owe the amount sued for, and the company does. The company and its members are bound in law and good conscience to hold him harmless against all the partnership liabilities and the costs of the prosecution against him. If the remaining partners had discharged their duty, by paying the debt, he would not have been distrusted. The costs of this suit would not have been incurred by him. *Mrs. Frierson* and her associates are liable to *Peale* for the costs incurred by him in this suit. If *Frierson's* testimony defeats the plaintiff's claim, her husband thus relieves her from liability for those costs. The court therefore did not err in rejecting him as a witness.

Judgment affirmed with costs.