CITY BANK OF BROOKLYN *v.* McCHESNEY *et al.*

In order to exonerate the members of a firm from liability upon a promissory note, made in its name after its dissolution, by one of the partners for the accommodation of a third person, and taken in good faith and for value by one not a dealer with the firm but having knowledge of its prior existence and not of its dissolution, it is necessary that notice of the dissolution should have been published by advertisement in a newspaper.

The holder cannot be affected by declarations or admissions of the makers or indorsers of the note made after he thus became the owner.

Where judgment is rendered upon a verdict after hearing the exceptions of the unsuccessful party at a general term, it is not a case of mis-trial, though the verdict be said to have been taken subject to the opinion of the court.

The case distinguished from *Cobb* v. *Cornish* (16 *N. Y.*, 602), and *Gilbert* v. *Beach* (*id.*, 606).

APPEAL from the Supreme Court. Action upon a promissory note purporting to be made by J. & A. Dearborn & Co. Upon the trial at the Kings Circuit before Mr. Justice ROCKWELL, these facts were proved: Previous to the making of the note on December 20th, 1853, John Dearborn, Alexander Dearborn and John McChesney, composed the firm of J. & A. Dearborn & Co., doing business in the city of New York. It had dealings with Ketchum & Co., the payees of the note. On the 17th October, 1853, Alexander Dearborn withdrew from the firm and D. O. Ketchum was subsequently, and before the note in question was discounted, informed by the defendants' bookkeeper of this fact, and also that John Dearborn and John McChesney composed the firm of Dearborn & Co. The note

was made by Alexander Dearborn for the accommodation of D. O. Ketchum & Co., and was discounted by the plaintiff for them in the ordinary course of business. It had previously discounted other notes of J. & A. Dearborn & Co., which were sent to New York and paid by the defendants there. No notice of the dissolution of this firm was published in the newspapers; none was given to the plaintiff, but it was known to many, and dealers were informed of it as they came into the store. Several persons heard of the dissolution soon after it took place and people generally said that Alexander had sold out to his brother, but there was no evidence that such dissolution was known to any of the officers of the bank when the note was discounted. The questions raised at the trial are stated in the following opinion. Upon its conclusion the jury, under the direction of the judge, found a verdict for the plaintiff, "subject—[as the Case states]—to the opinion of the court, to be heard in the first instance at a general term upon a case to be made, with liberty to either party to turn the case into a bill of exceptions or general verdict." The action was brought on at general term in the second district to be heard upon the defendants' exceptions, which were overruled and judgment rendered for the plaintiff upon the verdict. The defendants appealed to this court.

*John Graham*, for the appellants.

*John N. Taylor*, for the respondent.

JOHNSON, Ch. J. The defendants' first point is that the note in suit should not have been received in evidence because a witness had testified that one of the three persons sued as makers had said in the presence of another of the alleged makers to one of the indorsers, that he, the speaker, had never signed the words "& Co." to the note, and that the indorser addressed did not deny his statement. It had previously been shown that the note had been discounted by the plaintiffs in the ordinary course of their business, and was in their hands

as holders at the time of this conversation. Under these cir-
cumstances it was not in the power of the parties to the con-
versation by any statements or omissions to make evidence
against the plaintiffs.

The next point presented is that an error was committed in
rejecting a question put to Dwinell, a clerk of the indorsers,
whether he knew any alterations to have been made in the
entries of notes in the bill-book of Ketchum & Co., by the
addition of "& Co." to such entries. The rejection was clearly
proper, as the plaintiffs were in no way parties to what was
done in the books of Ketchum & Co., and could not therefore
be affected by such entries.

The next question relates to the exclusion of Alexander
Dearborn as a witness on behalf of McChesney, sued as a part-
ner with him, to prove that when he parted with the note the
words "& Co." were not upon it. That proof if given would
have operated to establish a defence equally available to the
witness and to the party on whose behalf it was offered. It
was not a case of personal defence to one party, but a general
defence to the makers that a fraudulent alteration in the note
had taken place. It falls within the principle of *Dean* v.
*Thornton* (3 *Kern.*, 266), and the ruling was correct.

The only other question relates to the effect of the dissolu-
tion of the partnership, which appears to have occurred on the
17th October, 1853, while the note bears date December 20th,
in the same year. The mere fact that the plaintiffs had dis-
counted several notes bearing the names of the firm does not con-
stitute the firm dealers with the plaintiffs in such a sense as to
require actual notice of the dissolution to be brought home to
them in order to exonerate the retiring partner from liability.
This was substantially held in *Vernon* v. *Manhattan Company*
(22 *Wend.*, 183), where the liability of the dissolved firm was
sustained on the ground that a series of notes had been dis-
counted by the bank for the accommodation of the firm; which
the court thought involved a knowledge on their part that
the bank was dealing on their firm credit, and therefore entitled
the bank to actual notice of dissolution. In the case before us

there was no notice of dissolution given in the ordinary way through the newspapers, and no notice in fact was brought home to the plaintiffs. The grounds on which publication of a dissolution of a partnership in a newspaper has always been deemed requisite to protect the retiring partner, in the absence of other notice, are well stated in the opinion of Senator VER-PLANCK in the case cited above.

No error has therefore been committed in the judgment of the court, and it must be affirmed unless a mis-trial has taken place as suggested by the defendants' counsel, and he has been or may have been prejudiced thereby. In the cases of *Cobb* v. *Cornish* (16 *N. Y.*, 602), and *Gilbert* v. *Beach* (*id.*, 606), the verdict was for one party and the judgment for the other. This could only regularly happen in cases situated as those were, on verdicts subject to the opinion of the court under the Code; otherwise the party obtaining the verdict in the first instance might be deprived of his exceptions and be without remedy. This case is not so situated; the defendants were beaten at the trial and also at the general term, and they have their exceptions here. The language of the case is not entirely clear, but looking at the situation of the cause and at what was really done rather than to the words used to describe it, a verdict was directed for the plaintiffs subject to exceptions to be heard at general term in the first instance. The defendants have had all their rights in every stage of the cause. Had judgment been given the other way at general term, the case would then have been like *Cobb* v. *Cornish* and *Gilbert* v. *Beach,* for it would then have been proceeded in as in cases of verdicts subject to the opinion of the court, and could not have been sustained.

SELDEN, J., was absent; all the other judges concurring,

Judgment affirmed.