## J. B. Rose and George U. Porter *vs.* George C. H. Coffield.

*Liability of a former Partner to a Creditor without Actual Notice of the Dissolution of the Partnership—Evidence.*

The appellants were, on the 27th October, 1871, and several years before, co-partners trading as J. B. R. & Co. On that day the appellee received for value from the appellant R. a promissory note drawn by another firm, dated on that day and payable one month after date, to the order of J. B. R. & Co., and endorsed by them and others. On the 29th November following, the appellee renewed the note till the 2nd December following, by receiving from the appellant R. a check payable on that day to the order of J. B. R. & Co., and endorsed in the firm's name by R. and by others. A notice of the dissolution of the partnership of J. B. R. & Co., had been published in the newspapers on the 16th November, 1871, and on several days subsequently. There was no proof that the appellee took or read any one of the newspapers in which the notice was published, and nothing bringing home to him actual notice of the dissolution of the partnership. In an action by the appellee to recover on the check against the appellants, it was HELD:

1st. That actual notice of the dissolution of the firm of J. B. R. & Co. should have been given to the appellee, in order to relieve the appellant P. from responsibility on the check.

2nd. That the note was admissible in evidence on the part of the appellee, not only to show the consideration for the check sued on, but to establish a previous dealing with the firm, and to show the circumstances under which he received the note, what he paid for it, and that he in fact received it from one of the partners of the firm.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*Exceptions.*—At the trial after the evidence set forth in the defendants' first and second exceptions (mentioned in the opinion,) the plaintiff offered the following prayer :

Rose, *et al. vs.* Coffield.

That if the jury find from the evidence in this case that the plaintiff received in good faith, from J. B. Rose, of the firm of J. B. Rose & Co., for a valuable consideration, at or about the date thereof, the promissory note offered in evidence, and if the jury further find that the signatures of the makers of said note and the endorsers thereon, are respectively the genuine signatures of the makers of said note and of the respective endorsers thereon; and if the jury further find that the defendants, J. B. Rose and George U. Porter, were, at the date of said note, viz., the 27th October, 1871, co-partners, trading under the name and firm of J. B. Rose & Co.; and if the jury further find, that the plaintiff did, on or about the day before the maturity of said note, to wit, on the 29th November, 1871, renew said promissory note, or extend the time of payment thereof, by receiving from J. B. Rose the check offered in evidence, (the cause of action in this case,) until the 2nd December, 1871, and if the jury further find that the signatures of the makers of said check, and of the endorsers thereon, are respectively the genuine signatures of the makers of said check, and of the endorsers thereon, and that said check was protested for non-payment, then the plaintiff is entitled to recover in this case the amount of said check, with interest thereon from said 2nd December, 1871, (less such sums of money as the jury may find from the evidence, have been paid to the plaintiff on account of said check, with interest thereon from date of such payments,) although the jury should find that the defendants dissolved said co-partnership some days prior to the maturity of said promissory note, and that the defendants had published a notice of its dissolution in four newspapers in the City of Baltimore, prior to the date of said check, there being no evidence that the plaintiff had actual notice of the dissolution.

And the defendant offered the following prayer:

If the jury from the evidence, believe that the firm of J. B. Rose & Co., during its existence, was composed of the

defendants, and that said firm was dissolved on the 16th November, 1871, and that notice of said dissolution was published in the "Gazette," "Price Current," "Sun" and "American," four newspapers published in the City of Baltimore, on the said 16th November, 1871, and several times thereafter, and that said check offered in evidence was signed after said dissolution of partnership, and publication of the same, by one of the late partners, J. B. Rose, without the knowledge or consent of George U. Porter, then George U. Porter is not liable in this form of action, and their verdict should be for the defendant, Porter.

The Court, (DOBBIN, J.,) granted the plaintiff's prayer, and rejected the defendants' prayer; the defendant, Porter, excepted; and the verdict and judgment being for the plaintiff, the defendants appealed.

The cause was argued before BARTOL, C. J., MILLER, ALVEY, ROBINSON and IRVING, J.

*William A. Stewart,* for the appellant, Porter.

The note was not declared on in the *narr.;* was not protested for non-payment; and was altogether inadmissible as evidence to bind the endorsers. *Neale, Harris & Co. vs. Fowler,* 31 *Md.,* 155.

It was not in the power of Rose after the publication of the dissolution of the partnership to enter into any new arrangement whereby to bind his former partner; and the appellant, Porter, should not be held responsible for the improper use of the name of a firm which had ceased to exist. *Ellicott, &c. vs. Nichols,* 7 *Gill,* 85; *Hopkins vs. Boyd,* 11 *Md.,* 107; *Hurst & Berry vs. Hill,* 8 *Md.,* 399; *Bell vs. Morrison,* 1 *Peters,* 351; *Newman vs. McComas,* 43 *Md.,* 70; *Rhodes, &c. vs. Amsinck & Co.,* 38 *Md.,* 345; *Martin vs. Kirk,* 2 *Humphreys,* 529; *Story on Partnership,* secs. 160, 161.

The mere fact that the appellee had bought one note on which the name of the firm of J. B. Rose & Co. was endorsed, and there being no evidence that he even knew that Porter was, at the time of the purchase of the note, a member of said firm, does not constitute the appellee a dealer with the firm in such a sense as to require *actual* notice of the dissolution to be brought home to him in order to exempt the retiring partner from liability. *Vernon vs. Manhattan Co.*, 22 *Wendell*, 183; *City Bank of Brooklyn vs. McChesney*, 20 *New York*, 242; *Palmer vs. Dodge*, 4 *Ohio State*, 21.

*Theos. B. Horwitz*, for the appellee.

There was no error in the ruling of the Court allowing the promissory note offered in evidence to be read to the jury.

In the absence of *actual* notice to the appellee of the dissolution of the firm of J. B. Rose & Co. before the promissory note was renewed by receiving the check in renewal thereof, Porter was bound by the endorsement on the check of the name of the firm by his co-partner, Rose, who was the active or business manager thereof; and there is nothing in the record to show that the appellee had actual or even constructive notice of the dissolution of the firm at the time he received the check in renewal of the note; no evidence having been offered at the trial of the case to prove that the appellee, during the time the notice was published, took or read either of the newspapers in which it was inserted. Nor is there anything in the record to show that the appellee had any reason to suspect that the check in question was so endorsed by Rose without the authority of his co-partner. *Porter vs. White*, 39 *Md.*, 619; *Boyd vs. McCann*, 10 *Md.*, 125; *Pope vs. Risley*, 23 *Mo.*, 187; *Dickinson vs. Dickinson*, 25 *Grattan*, 329; *Ennis, et al. vs. Williams, et al.*, 30 *Ga.*, 695; *Parsons on Partnership*, sec. 419, (3rd *Ed.*, *p.* 455.)

MILLER, J., delivered the opinion of the Court.

This suit was brought by the appellee against the appellants, Rose and Porter, as partners, composing the firm of "J. B. Rose & Co.," upon a check, of which the plaintiff was the endorsee and holder. This check was upon the Citizens' National Bank for $430, was dated the 29th of November, 1871, and was payable on the 2nd of December following. It was drawn by "Eastman & Rogers," to the order of "J. B. Rose & Co." and bears the endorsement of the payees, and also of two other firms. The proof shows that this check was given in renewal of a promissory note for the same amount, dated the 27th of October, 1871, payable one month after date, drawn and endorsed by the same firms, and also endorsed by another firm. The plaintiff received this note, on the day of its date, from Rose, in good faith, and paid him therefor $430 in cash. He also received the check, in renewal of the note, on the day of its date, from Rose, who then endorsed the name of "J. B. Rose & Co." thereon. At the date of the note, and for some years prior thereto, Rose and Porter had been partners, conducting the printing business under this firm name, Rose being the active business manager of the firm. On the 16th of November, 1871, after the date of the note, but before the check was given, the firm was dissolved, and notice of the dissolution published in the newspapers of Baltimore City, for several days. But there is no proof that the plaintiff took or read either of the papers in which this publication was made, and there is, therefore, nothing in the case bringing home to him actual notice of the dissolution, or affecting him with notice thereof. *Boyd vs. McCann,* 10 *Md.,* 118. In this state of case the question arises, whether Porter is liable upon this check, the firm having been in fact dissolved before Rose endorsed the firm's name thereon.

It is familiar law, that after dissolution one partner cannot impose new obligations on the firm, or vary the

form or character of those already existing. *Ellicott vs. Nicholls*, 7 *Gill*, 100; *Bell vs. Morrison*, 1 *Pet.*, 370. He has no authority after dissolution to give a note in the firm's name, even though its consideration be a pre-existing debt of the firm, nor to renew an existing note of the dissolved firm, for these constitute *new contracts*, and cannot, therefore, bind his former partner. *Hurst & Berry vs. Hill*, 8 *Md.*, 399; *Hopkins vs. Boyd*, 11 *Md.*, 107; *Martin vs. Kirk*, 2 *Humph.*, 529; *National Bank vs. Norton*, 1 *Hill*, 572. But to this general rule there are certain well defined and clearly established exceptions or qualifications. For instance, the agency of each partner to bind his co-partners can only be effectually determined by giving notice of its revocation. The principle is therefore now well established, that where a partnership is *voluntarily* dissolved, or one of the ostensible or known partners retires from the firm, (which is in fact a dissolution,) and there is no public notice of the dissolution given, by publication in a newspaper or otherwise, the power of each to bind the rest as to third persons, who have no knowledge of the dissolution, remains in full force, although as between the partners themselves, a dissolution or a retirement is a revocation of the authority of each to act for the others; and hence if a known partner retires, and no such notice is given, he will be liable to be sued in respect to a promissory note made after his retirement by his late partner in the name of the firm—even though the plaintiff may have had no dealings with the firm previous to the retirement or before the making of the note. *Lindley on Partnership*, 327; *Parkin vs. Carruthers*, 3 *Esp.*, 248; *Williams vs. Keats & Archer*, 2 *Starkie*, 290; *Mulford vs. Griffin*, 1 *Fos. & Fin.*, 145; *Anderson vs. Weston & Badcock*, 6 *Bing.*, *N. C.*, 296; *Ketcham & Black vs. Clark*, 6 *Johns.*, 144; *Dickinson vs. Dickinson & Co.*, 25 *Grattan*, 321. In such cases the law regards the contract as made with the firm and on *their credit*, and holds the retiring

Rose, *et al. vs.* Coffield.

partner liable, upon the principle that where one of two innocent persons must suffer from giving a credit, he who has misled the confidence of the other, and has been the cause of the credit, either by his representations or his negligence, ought to suffer instead of the other. Again, while public notice by advertisement, such as was given in this case, may suffice to conclude all persons who have not had any previous dealings with the firm, it will not be sufficient as to those who have had such dealings. All the authorities agree that as to persons who have previously dealt with the firm, it is requisite that actual notice of the dissolution should be brought home to them, or at least that the credit should be given under circumstances from which actual notice may be inferred. *Story on Part.*, sec. 161; *Parsons on Part.*, 412. But what will amount to such previous dealing as to entitle a party to notice of this kind, is sometimes a difficult question, and this in fact is the real and only point of difficulty in the case before us.

It has been argued with much force that the plaintiff had but a single transaction with this firm before its dissolution, which consisted simply of the purchase by him of the note of the 27th of October, and that this did not amount to such *dealing* with the firm, as to entitle him to actual notice. So far as our researches have extended, the cases in which this question has been considered are not numerous, and those in which the decisions have necessarily turned upon it are very few. It is certain that no inflexible rule or standard of dealing, by which all cases can be governed or measured, has been established. There was a very able discussion of the question in the Court of Errors of New York, in the case of *Vernon vs. Manhattan Co.*, 22 *Wend.*, 183. In that case a note for $5000 was given by Vernon & Co. in December, 1831, payable to Moore. It was endorsed by another firm after Moore's name, and in that shape was discounted by the bank for Moore's accommodation. There were then several re-

newals of it in the same form, with payments reducing the amount, until the 15th of April, 1833, when the note sued on for the balance of $1700 was drawn by one of the partners in the partnership name. The firm of Vernon & Co. continued until the 28th of February, 1833, when it was dissolved, and notice of the dissolution published in the newspapers. There was therefore but one original note, though it was followed by several renewals before the dissolution, and the Court hold that the bank must be considered as having had dealings with the firm within the meaning of the rule requiring actual notice of the dissolution. That decision was followed by the Supreme Court of the same State, in *National Bank vs. Norton*, 1 *Hill*, 572, where a note was *endorsed* by a firm and discounted by the bank, and several renewals with deductions followed. In that case the original note was discounted on the 24th of January, 1837, and the firm was dissolved, and notice of dissolution duly published, on the 1st of February, 1837, so that the *first*, as well as the subsequent renewals took place *after* the dissolution. The Court held that the note sued on being an attempt to renew an old note of the firm, which lay in bank, and was confessedly binding on the firm, the partners must be considered as dealers with the bank, and that the latter was therefore entitled to actual notice of the dissolution. In *Wardwell vs. Haight*, 2 *Barb.*, 549, two previous transactions, one consisting of a purchase of goods *for cash*, and the other a purchase on credit, which was paid prior to the dissolution were held sufficient. In *Clapp vs. Rogers*, 2 *Kernan*, 283, two previous very small purchases on credit, one to the amount of $11.03, and the other to $20.40, which had been paid prior to the dissolution were likewise held sufficient, and the Court of Appeals, by DENIO, J., said the rule requiring actual notice "proceeds upon a general presumption that one giving credit to a mercantile firm, does so upon the responsibility of the individual partners; and

we cannot annex to it a distinction based upon the *amount of the credit* without destroying that certainty which is essential to its utility." In the subsequent case of *City Bank of Brooklyn vs. McChesner*, 20 *N. Y.*, 240, there was no public notice of the dissolution by publication in the newspapers or otherwise, and what is said by the Court in that case, upon the question we are now considering, may well be regarded as a mere *dictum*. Reference has also been made to the cases of *Hutchins vs. Bank of Tennessee*, *Hutchins vs. Sims*, and *Hutchins vs. Hudson*, 8 *Humph.*, 418, 423, 426; *Grinnan vs. Baton Rouge Mills Co.*, 7 *La. Ann.*, 638, and *Amidown & Co. vs. Osgood & Minard*, 24 *Verm.*, 278, in which are to be found decisions or *dicta*, bearing to some extent upon this question, but we discover nothing in any of them in conflict with the New York decisions we have cited.

The principle, as shown by these authorities, upon which this rule of actual notice is founded seems to embrace the present case. That principle is that credit already raised on the faith of the partnership is presumed to be continued on the same footing, unless special notice of a change be given; and as every partner knows, or has the means of knowing, who are the persons with whom his firm has transacted business, and from whom it has received credit, public policy and natural justice alike demand that he should give to every such party personal and special notice of the withdrawal of his responsibility. As was said by the CHANCELLOR, in *Vernon vs. Manhattan Co.*, the word " dealing" when used in reference to this rule "is merely used as a general term to convey the idea that the person who is entitled to actual notice of the dissolution, must be one who has had business relations with the firm, by which a credit is raised upon the faith of the co-partnership." It may be true, as was most forcibly stated by Senator VERPLANCK in the same case, that one who merely takes the negotiable paper of a firm from a

Rose, *et al. vs.* Coffield.

third hand, and receives payment through a bank, or passes it away to another, cannot be called a dealer with the firm; and it may well be said that it would be to require impossibilities, to insist that the partners of a large commercial house in extensive business, should be able to know for years who had been the last holder of their paper, or through whose hands it may have passed, and to send to all of them special notice, as dealers. But the case now before us is not of that character, and no such difficulty arises. The plaintiff received the note of October, 1871, with all the subsequent endorsements then upon it, directly from Rose, one of the partners of this firm, then subsisting, and paid him for it its full face value, thus bringing the plaintiff and the firm into a mutual dealing. It cannot be doubted but that by this transaction a credit was raised upon the faith of the partnership, that the plaintiff gave them credit, and relied upon the united responsibility of the two partners. Porter, the other ostensible and known partner knew, or had the means of knowing, through whom the money upon this note was raised. The plaintiff dealt in this transaction immediately and directly with the firm, and did not receive the note from a third party, and merely pass it away to another. Nor is there any proof to show that this firm was a great commercial house, engaged in extensive trade, and constantly issuing their negotiable securities, so as to make it difficult for them to know through whose hands their paper may have passed. We are therefore of opinion, this case must be governed by the general rule, and that actual notice of the dissolution should have been given to the plaintiff in order to relieve the defendant, Porter, from responsibility on this check.

It follows there was no error in the rulings upon the prayers contained in the third exception. The evidence offered in the first and second exceptions was also clearly admissible. It was part of the plaintiff's case to offer in

evidence the note of October, 1871, not only to show the consideration for the check sued on, but to establish a previous dealing with the firm, and to show the circumstances under which he received the note, what he paid for it, and that he, in fact, received it from one of the partners of the firm.

<div align="right">

*Judgment affirmed,*

*with costs.*