FREDERICK M. SOLOMON ET AL. v. CHARLES H. KIRKWOOD AND THEODORE HOLLANDER.

*Dissolution of partnership—Notice—Conspiracy.*

1. A partnership is dissolved unless equity can interfere when one of the firm takes exclusive possession and gives notice of dissolution to the others and the public.

2. Such notice of the dissolution of a partnership is sufficient as is likely to make the fact generally known in the locality concerned, and to those with whom business is done.

3. Declarations of one conspirator are inadmissible in proof of the conspiracy; though they may perhaps be evidence against his associates after the conspiracy is made out.

Error to Marquette. (Grant, J.)　Oct. 16.—Nov. 19.

ASSUMPSIT.　Plaintiff brings error.　Reversed.

*Ball & Hanscom* for appellants.　One partner cannot dissolve the firm at pleasure on giving notice: *Ferrero v. Buhlmeyer* 34 How. Pr. 33; *Pearpoint v. Graham* 4 Wash. C. C. 234; *Henn v. Walsh* 2 Edw. 129; *Sanderson v. Milton* 18 Vt. 107; *Peacock v. Peacock* 16 Ves. 56; *Howell v. Harvey* 5 Ark. 281; *Werner v. Leisen* 31 Wis. 169; 5 Wait's A. & D. 136; Story on Part. §§ 270, 275, 276; Pothier on Part. 152; Collyer on Part. 119; 1 Ewell's Lindl. Part. 222; *Crawshay v. Maule* 1 Swanst. 495; what one party may

have been heard to say at some other time, as to the share which others had in the execution of a common design, or as to the object of the conspiracy, is inadmissible: 2 Best's Ev. § 508; 2 Whart. Ev. §§ 1205, 1206; *Hamilton v. Smith* 39 Mich. 222; Reynolds' Theory of Evidence § 7.

*W. P. Healy* for appellee. A retiring partner need not give notice to relieve him from liability to those who for the first time deal with the firm after its dissolution, unless he permits his name to be used in the business, or so conducts himself with reference to it, as to induce the belief that he is still a member: *Gaar v. Huggins* 12 Bush 259; *Lovejoy v. Spafford* 93 U. S. 430.

COOLEY, C. J. The plaintiffs, who are, in the city of Chicago, dealers in jewelry, seek to charge the defendants, as partners, upon a promissory note for seven hundred and ninety-one $\frac{92}{100}$ dollars, bearing date Nov. 9, 1882, and signed "HOLLANDER & KIRKWOOD." The note was given by the defendant Hollander, but Kirkwood denies that any partnership existed between the defendants at the date of the note.

The evidence given on the trial tends to show that on July 6, 1882, Hollander & Kirkwood entered into a written agreement for a partnership for one year from the first day of the next ensuing month, in the business of buying and selling jewelry, clocks, watches, etc., and in repairing clocks, watches and jewelry, at Ishpeming, Michigan. Business was begun under this agreement, and continued until the latter part of October, 1882, when Kirkwood, becoming dissatisfied, locked up the goods and excluded Hollander altogether from the business. He also caused notice to be given to all persons with whom the firm had had dealings that the partnership was dissolved, and had the following inserted in the local column of the paper published at Ishpeming: "The copartnership heretofore existing between Mr. C. H. Kirkwood and one Hollander, as jewelers, has ceased to exist, Mr. Kirkwood having purchased the interest of the latter." This was not signed by any one.

A few days later Hollander went to Chicago, and there, on November 9, 1882, he bought, in the name of Hollander &

Kirkwood, of the plaintiffs goods in their line amounting to $791.92, and gave to the plaintiffs therefor the promissory note now in suit. The note was made payable December 15, 1882, at a bank in Ishpeming. When the purchase was completed Hollander took away the goods in his satchel. The plaintiffs had before had no dealings with Hollander & Kirkwood, but they had heard there was such a firm, and were not aware of its dissolution. They claim to have made the sale in good faith, and in the belief that the firm was still in existence. On the other hand, Kirkwood claimed that Hollander and the plaintiffs had conspired together to defraud him by a pretended sale to the firm of goods which the plaintiffs knew Hollander intended to appropriate exclusively to himself; and he was allowed to prove declarations of Hollander which, if admissible, would tend strongly to prove such a conspiracy.

The questions principally contested on the trial were— *First*, whether the acts of Kirkwood amounted to a dissolution of the partnership; *second*, whether sufficient notice of dissolution was given; and *third*, whether there was any evidence to go to the jury of an understanding between Hollander and the plaintiffs to defraud Kirkwood. The trial judge, in submitting the case to the jury, instructed them that Kirkwood, notwithstanding the written agreement, had a right to withdraw from the partnership at any time, leaving matters between him and Hollander to be adjusted between them amicably or in the courts; and for the purposes of this case it made no difference whether Kirkwood was right or wrong in bringing the partnership to an end: if wrong, he might be liable to Hollander in damages for the breach of his contract. Also, that when partners are dissatisfied, or they cannot get along together, and one partner withdraws, the partnership is then at an end as to the public and parties with whom the partnership deals, and neither partner can make contracts in the future to bind the partnership, provided the retiring partner gives the proper notice. Also, that if they should find from the evidence that there was trouble between Hollander and Kirkwood prior to the sale of the

goods and the giving of the note; that Kirkwood informed Hollander, in substance, that he would have no more dealings with him as partner; that he took possession of all the goods and locked them up, and from that time they ceased to do business,—then the partnership was dissolved. Further, that whether sufficient notice had been given of the dissolution was a question for the jury. Kirkwood was not bound to publish notice in any of the Chicago papers; he was only bound to give actual notice to such parties there as had dealt with the partnership. But Kirkwood was bound to use all fair means to publish as widely as possible the fact of a dissolution. Publication in a newspaper is one of the proper means of giving notice, but it is not absolutely essential; and on this branch of the case the question for the jury was whether Kirkwood gave such notice of the dissolution as under the circumstances was fair and reasonable. If he did, then he is not liable on the note: if he did not, he would still continue liable.

The judge also submitted to the jury the question of fraud in the sale of the goods. The jury returned a verdict for the defendants.

I. We think the judge committed no error in his instructions respecting the dissolution of the partnership. The rule on this subject is thus stated in an early New York case. The right of a partner to dissolve, it is said, "is a right inseparably incident to every partnership. There can be no such thing as an *indissoluble* partnership. Every partner has an indefeasible right to dissolve the partnership as to all future contracts by publishing his own volition to that effect; and after such publication the other members of the firm have no capacity to bind him by any contract. Even where partners covenant with each other that the partnership shall continue seven years, either partner may dissolve it the next day by proclaiming his determination for that purpose; the only consequence being, that he thereby subjects himself to a claim for damages for a breach of his covenant. The power given by one partner to another to make joint contracts for them both, is not only a revocable

power, but a man can do no act to divest himself of the capacity to revoke it." *Skinner v. Dayton* 19 Johns. 513, 538. To the same effect are *Mason v. Connell* 1 Whart. 381 and *Slemmer's Appeal* 58 Penn. St. 155. There may be cases in which equity would enjoin a dissolution for a time, when the circumstances were such as to make it specially injurious; but no question of equitable restraint arises here. When one partner becomes dissatisfied there is commonly no legal policy to be subserved by compelling a continuance of the relation, and the fact that a contract will be broken by the dissolution is no argument against the right to dissolve. Most contracts may be broken at pleasure, subject however to responsibility in damages. And that responsibility would exist in breaking a contract of partnership as in other cases.

II. The instruction respecting notice was also correct. No court can determine for all cases what shall be sufficient notice and what shall not be : the question must necessarily be one of fact. Publication of notice of dissolution in a local newspaper is common, but it is not the only method in which notice can be given. The purpose of the notice is to make notorious in the local community the fact that a dissolution has taken place; and publication of a notice may or may not be the most effectual means for that purpose. Very few persons in any community probably read all the advertisements published in the local papers; and matters of local importance which are advertised are quite as likely to come to them from other sources as from the published notices.

That publication in a newspaper is sufficient is not disputed by the defense, provided it appears on its face to be authoritative. *Ketcham v. Clark* 6 Johns. 144: s. c. 5 Am. Dec. 197; *Graves v. Merry* 6 Cow. 701: s. c. 16 Am. Dec. 471; *National Bank v. Norton* 1 Hill 578; *Nott v. Douming* 6 La. 680: s. c. 26 Am. Dec. 491; *Watkinson v. Bank of Pennsylvania* 4 Whart. 482: s. c. 34 Am. Dec. 521; *Rose v. Coffield* 53 Md. 18: s. c. 36 Am. Rep. 389. But in this case it is said the notice did not appear to be authoritative; it appeared as a local editorial item, and such items are often baseless, and may in any particular case have no better foun-

.dation than rumor or even suspicion. They do not bear upon their face the verity which a notice signed by the party would import.

All this may be true without being conclusive. When the purpose is to put the fact of dissolution before the public, it certainly cannot be affirmed that the purpose is more likely to be accomplished by a formal advertisement than by an item in the local column of the newspaper. Many publishers, it is believed, have in their papers a local column in which items appear which seem on their face to be editorial, but which are really advertisements; and not only paid for, but paid at extra rates, for the reason that in that column they would be more likely to be seen and read than if published as advertisements in the ordinary way. When such is the case, a court could hardly hold as matter of law that the advertisement would be sufficient, but the notice in the local column not. To do so would be to make form more important than the purpose to be accomplished. One who derives knowledge of the fact from public notoriety is sufficiently notified: *Bernard v. Torrance* 5 Gill & J. 383; *Halliday v. McDougall* 20 Wend. 81; and probably in many small communities a fact would sooner be made notorious by a notice in the local column of the county or village paper than in any other way. In a large city it might be otherwise. But all that can be required in any case is that such notice be given as is likely to make the fact generally known locally. *Vernon v. Manhattan Co.* 22 Wend. 183, 193; *Lovejoy v. Spafford* 93 U. S. 430. When that is done the party giving the notice has performed his duty, and any one contemplating for the first time to open dealings with the partnership must at his peril ascertain the facts. This, in effect, was the instruction given.

III. But we think the judge erred in receiving evidence of Hollander's admissions or declarations tending to show fraudulent collusion between him and the plaintiffs. The declarations of a conspirator may be evidence against his associates after the conspiracy is made out; but to receive them as proof of the conspiracy would put every man at the

mercy of rogues.   We find in this case no evidence of the, conspiracy except in the statements of Hollander ; and those having been erroneously received there was nothing on that. branch of the case to submit to the jury.

For this error there must be a new trial.

The other Justices concurred.