## MARQUETTE CLOAK & SUIT CO. v. NETTER & MEYER et al. *

### No. 4710.

Court of Appeal of Louisiana. Second Circuit.

Jan. 3, 1934.

---

*Rehearing denied February 5, 1934.

R. C. Bauer, of Alexandria, for appellant.

W. C. Roberts, of Alexandria, for appellee.

TALIAFERRO, Judge.

Plaintiff sues defendant, a commercial copartnership, and its members, to recover an amount due on open account for goods, clothing, and other merchandise, sold and delivered in the months of October, November, and December, 1931, and in January, 1932. The firm's membership is alleged to be Emile Netter, Mrs. Helen Newman Meyer, widow of the late Morris Meyer, and her three sons, Sylvan G. Meyer, Lester Meyer, and Alvin Meyer. Prior to June 14, 1923, the firm was composed of Emile Netter and Morris Meyer. Meyer died on that date, and his widow and three sons, named above, accepted his succession unconditionally, and they, with Netter, operated the business until July 23, 1923. On that date the three sons donated or assigned their interest in the assets of the partnership to their mother. She and Netter thereafter continued to run the business until, as she and the sons allege, December 1, 1930, when she sold her share in the business to her son, Sylvan G. Meyer. As long as Mrs. Meyer had an interest in the partnership business, she was represented therein by Sylvan G. Meyer, who was a clerk in the store and performed clerical and other work for it, including signing of checks and writing letters. He continued to perform such duties without change until the business failed from financial embarrassment. Lester Meyer and Alvin Meyer deny liability to plaintiff to any extent because they had assigned to their mother, many years before the account sued on was created, the interest they inherited from their father in the partnership business.

Mrs. Meyer denies responsibility to plaintiff for the reason that she ceased to be a member of, or interested in, the partnership of Netter & Meyer on and after December 1, 1930, at which time she transferred her interest in the business to Sylvan G. Meyer. She avers that when she severed her connection with defendant firm it was not due any amount to plaintiff on account or otherwise.

Sylvan G. Meyer admits the correctness of the account sued on, and admits that defendant firm, after December 1, 1930, was composed solely of himself and Emile Netter. He denies that the firm was due plaintiff any amount on December 1, 1930, and denies that his mother is responsible to plaintiff for any amount or on any account. He avers that on June 28, 1932, said partnership and its then members were adjudicated bankrupts in the United States District Court for the Western District of Louisiana, and that the account sued on was listed as one of their liabilities when the surrender in bankruptcy was made; and that plaintiff is relegated to the bankruptcy court to assert its account.

Emile Netter's answer is virtually the same as that of Sylvan G. Meyer.

There was judgment for plaintiff against Netter & Meyer, Emile Netter, Sylvan G. Meyer, and Mrs. Helen Newman Meyer, jointly, severally, and in solido, for the account sued for. Mrs. Meyer alone appealed.

In this court, while plaintiff does not concede that Mrs. Meyer ceased to be a member of the firm of Netter & Meyer after December 1, 1930, yet discussion in brief is restricted almost entirely to the question of her responsibility to plaintiff because, on December 1, 1930, plaintiff was a creditor of the firm and was never notified thereafter of Mrs. Meyer's withdrawal therefrom; and, therefore, continued to extend credit to it, as had previously been the rule, largely, if not entirely, under the belief that she was still a member thereof and responsible for its obligations.

It is shown beyond any question, notwithstanding denial thereof by Mrs. Meyer and her son, Sylvan, that on December 1, 1930, Netter & Meyer was due plaintiff over $500 on account. This indebtedness was liquidated by giving of firm notes on February 14, 1931. These notes were paid as they matured. Therefore, in view of these established facts, plaintiff was entitled to have actual notice of Mrs. Meyer's retirement from the firm as a member. So long as they were in ignorance of the change, in view of past business relationship of the two firms, plaintiff had the right to assume that Mrs. Meyer's interest in and membership of the firm continued, and, acting upon that assumption, to extend credit to the partnership with the assurance that it could hold her responsible for partnership obligations.

This principle of the law of commerce is well established in our jurisprudence, as it seems to be elsewhere. Ruling Case Law, vol. 20, p. 964, par. 191; Corpus Juris, vol. 47, p. 1035; Lowe & Pattison v. Penny, 7

822

La. Ann. 356; Grinnan v. Baton Rouge Mills Co., 7 La. Ann. 638; Nott & Co. v. Douming, 6 La. 680, 26 Am. Dec. 491.

In Fowler Commission Company v. Gray & Keener et al., 16 La. App. 167, 133 So. 470, this court considered this question in the light of facts very much like those in the case at bar. It was there held that, in order for retiring partner to escape liability for merchandise bought in firm name; after alleged retirement, actual notice of the retirement must have been given to seller. Authorities from other states supporting this holding are cited.

Defendant firm had been buying goods from plaintiff on open account for over twelve years when the present account arose. After the death of Morris Meyer, credit was largely extended to it because it was known to plaintiff that Mrs. Meyer was in good financial condition, being amply able to respond for the firm's obligations. The record leaves no doubt in our mind that the credit represented by the account sued for would not have been granted had it been known that she had retired from the firm.

There was an abortive effort by defendants to prove that notice was given plaintiff by mail of Mrs. Meyer's withdrawal from defendant firm. They did not produce a copy of such notice, and it is shown that the change in the firm's membership was not published in the newspapers in the city of Alexandria, where it carried on its business. It is not shown that the change in its membership personnel was generally known in the community there. In fact, it is not disclosed that any one had knowledge of the change, except defendants.

We are impelled to the conclusion that Mrs. Meyer's retirement from this firm was designedly guarded from public knowledge. No knowledge of the shift reached Bradstreet's Agency prior to September 14, 1931. A report of that date, and several prior by that agency, state the firm to be composed of Mrs. Meyer and Emile Netter. Plaintiff's salesman, who lived in the city of Alexandria, knew nothing of the change until informed by Sylvan Meyer about April 1, 1932. This information was imparted to him by Mr. Meyer during a conversation between them at the company's place of business, at which time the salesman was endeavoring to collect a check of the firm which had been dishonored. Meyer stated that plaintiff could not "get anything from the firm," and, being reminded that his mother was responsible as one of its members, replied that she had nothing to do with the firm. This salesman often went to this store, took orders for merchandise, and had frequent contact with Netter and Sylvan Meyer. He transmitted to plaintiff the information given him in April, 1932, about Mrs. Meyer's

retirement from the business in December, 1930, and his letter to his principal was the first intelligence received by them on the subject.

There was no proof adduced in support of the allegation that Netter & Meyer, Emile Netter, and Sylvan G. Meyer had been adjudicated bankrupts in June, 1932. Even if this be true, Mrs. Meyer's liability to plaintiff, as an in solido obligor, would not thereby be affected. Bankruptcy Act, § 16a, of chapter 3 (11 USCA § 34).

We are favored with a written opinion of the judge a quo wherein he lucidly analyzed and discussed the issues of the case and the evidence of both sides. We are clear in the opinion that he has correctly disposed of all the defenses urged against plaintiff's right to recover.

The judgment appealed from is affirmed.